CARL M. WIGGINS AND CLARA P. WIGGINS v. THE CITY OF MONROE, A MUNICIPAL CORPORATION, AND JOHNNIE H. ROLLINS, JR.

No. 8420SC138

(Filed 19 February 1985)

1. **Municipal Corporations § 9 — chief building inspector — no authority to demolish dwelling**

   Defendant's chief building inspector had no authority to have plaintiff's building demolished where, pursuant to the city code, the inspector's order requiring repair or demolition, and the city's order requiring the inspector to take the actions dictated in his order, the inspector had the option to have city employees repair or demolish the dwelling or to have plaintiffs do so; the inspector chose to have plaintiffs proceed with the repairs; and once plaintiffs began the repairs within the time limit set by the inspector, he had no authority to pursue the demolition until the 60-day repair period which he allowed for had elapsed.

2. **Municipal Corporations § 10 — demolition of dwelling — liability of building inspector**

   Defendant city's building inspector, in initially ordering the repair or demolition of plaintiffs' dwelling and in later complying with the city council's ordinance requiring him to enforce his order, was a public official performing governmental duties involving the exercise of judgment and discretion; however, plaintiffs' affidavits that the inspector directed them to repair their house within ten days, signed a building permit authorizing them to begin repairs, and then demolished the house after they had begun timely repairs tended to show that the inspector's behavior was corrupt or malicious or that he acted outside of and beyond the scope of his duties, and the inspector therefore was not immune from liability.

3. **Municipal Corporations § 12.3 — acts of building inspector — liability of city — purchase of insurance — waiver of sovereign immunity**

   Defendant city waived its immunity from liability for torts of its officers committed while they were performing a governmental function by the pur-

chase of a comprehensive general liability insurance policy which provided coverage for an "occurrence" which resulted in "bodily injury or property damage neither expected nor intended from the standpoint of the insured."

APPEAL by plaintiffs from *Helms, Judge.* Order entered 30 October 1983 in Superior Court, UNION County. Heard in the Court of Appeals 25 October 1984.

*Grier, Parker, Poe, Thompson, Bernstein, Gage & Preston, by Christian R. Troy, for plaintiff appellants.*

*Love & Milliken, by John R. Milliken, for defendant appellees.*

BECTON, Judge.

In this case we must determine whether summary judgment was properly granted in favor of the defendants, the City of Monroe and Johnnie H. Rollins, Jr., the City's chief building inspector, in the Wigginses' action to recover damages sustained as a result of the demolition by the defendants of a house owned by the Wigginses.

I

N.C. Gen. Stat. Sec. 160A-441 (1982) authorizes cities and counties to exercise their police powers "to repair, close or demolish" dwellings which "are unfit for human habitation due to dilapidation. . . ." Pursuant to G.S. Sec. 160A-441 *et seq.* (1982), the City of Monroe enacted its minimum housing standards, as codified in the Monroe City Code (Code) at Sec. 9-1031 *et seq.* (Supp. 1979). Finding that the house owned by the Wigginses was "unfit for human habitation" and that the cost of repairs would exceed 60% of the value of the building, thereby qualifying it as a "dilapidated" building under Code Sec. 9-1032(4) (Supp. 1979), Chief Building Inspector Rollins, on 17 April 1980, pursuant to Code Sec. 9-1045(b) (Supp. 1979) and G.S. Sec. 160A-443(3) (1982), ordered the Wigginses to bring the dwelling into compliance by "vacating—repairing and/or demolishing" it before 29 April 1980. The Wigginses did not pursue the administrative remedies provided under Code Sec. 9-1045(d) (Supp. 1979) and G.S. Sec. 160A-446(c) (1982). When the Wigginses failed to comply with Rollins' order, the Monroe City Council, by ordinance dated 20 May 1980, directed Rollins to take the actions dictated in his

order. The ordinance set no time limit on the building inspector's actions. Again, the Wigginses did not appeal the Council's decision.

Rollins chose to have the house repaired, and, according to his affidavit, "indulged the plaintiffs until April 6, 1981 in an effort to allow them to make the necessary repairs." On 24 March 1981, Rollins wrote the Wigginses a letter advising them that they had to begin repairs on the house within ten days and to complete the repairs within 60 days or the house would be demolished. Nine days later, on 2 April 1981, the Wigginses obtained what they contend was a building permit from the City, signed by Rollins, authorizing them to remodel and repair the house. Rollins contends that what he signed was a zoning check request with reference to the subject property and not the actual permit. The Wigginses further contend that they began to repair the house on 2 April 1981; the defendants contend that they merely began to assemble building repair materials on that date. In any event, on 6 April 1981, the defendants demolished the house despite the protests of the Wigginses. Defendant Rollins personally directed and completed the demolition.

II

On appeal, the Wigginses contend that summary judgment was improper because the evidence before the court raised genuine issues of material fact with respect to (a) whether the defendants were estopped from demolishing the Wigginses' house, rather than insuring its repair; (b) whether Rollins was acting with a corrupt or malicious intent when he personally signed a building permit authorizing the repair of the house and later directed its destruction four days after repairs had been started; and (c) whether the demolition was done in accordance with G.S. Sec. 160A-443 (1982). The defendants, on the other hand, contend that (a) Rollins' letter to plaintiffs "was simply an additional extension granted by the defendant Rollins and was not a requirement of law . . . [and therefore] could not work an estoppel on the City insofar as its ordinance dated May 20, 1980 is concerned"; (b) "governmental immunity" is a bar to the Wigginses' action; and (c) the Wigginses, by failing to challenge the administrative proceedings taken against them or to otherwise appeal from the enactment of the 20 May 1980 ordinance, are barred from now

challenging the validity of the proceedings. For the following reasons, we believe summary judgment was improperly granted.

### III

Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Ragland v. Moore*, 299 N.C. 360, 261 S.E. 2d 666 (1980). And, the standard is well-known: All the evidence must be viewed in the light most favorable to the non-moving party; and questions of witness credibility are to be resolved by the jury. *Id.*

### A.

[1] We turn to the relevant provision of the Monroe City Code, Sec. 9-1045(c)(2) (Supp. 1979):

> After failure of an owner of a . . . dilapidated dwelling, to comply . . ., the Inspector shall submit to the City Council an ordinance ordering the Inspector to cause such dwelling . . . to be repaired, altered, improved, or vacated and closed and removed or demolished, as provided in the original order of the Inspector. . . .

and the relevant portion of the 20 May 1980 ordinance, issued pursuant thereto: "The building inspector is hereby authorized and directed to proceed to repair or demolish the above described dwelling in accordance with his order to the owner thereof dated the 17th day of April 1980, and with the housing code and G.S. Sec. 16A-443." Generally, municipal ordinances are to be construed according to the same rules as statutes enacted by the legislature. *Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs of Town of Nags Head*, 299 N.C. 620, 265 S.E. 2d 379 (1980). The aim is to ascertain and effectuate the intent of the municipal legislative body. *George v. Town of Edenton*, 294 N.C. 679, 242 S.E. 2d 877 (1978).

Construing the provisions of the Monroe City Code Sec. 9-1045(c)(2) (Supp. 1979), the 17 April 1980 order, and the 20 May 1980 ordinance together, we discern that Rollins had the option, under the terms of the 20 May 1980 ordinance, to either have city employees repair or demolish the Wigginses' dwelling, or to have the Wigginses themselves repair or demolish the dwelling. Ac-

cording to the Wigginses' pleadings, affidavits, and exhibits, Rollins chose to have the Wigginses proceed with the repairs. The Wigginses allege that they invested in materials and labor and timely commenced the repairs, but that the building was nevertheless demolished. The defendants argue that the 20 May 1980 ordinance authorized the demolition. In their pleadings the defendants state that Rollins' letter to the Wigginses "was simply an additional extension granted by the defendant Rollins and was not a requirement of law." We disagree.

The defendants rely on *Helms v. Charlotte*, 255 N.C. 647, 122 S.E. 2d 817 (1961) to support their argument. We find *Helms* distinguishable, since the *Helms* ordinance was not phrased in the disjunctive. The 20 May 1980 ordinance authorized alternative remedies—repair or demolition, which, under certain circumstances, are mutually exclusive. This case is such an instance. Once the Wigginses allegedly began the repairs within the 10-day time limit set by Rollins in his letter, Rollins had no authority to pursue the demolition until the 60-day repair period had elapsed. Although Rollins had the legal right initially to pursue either remedy—repair or demolition—he could not abandon the chosen remedy—the reparations—in midstream.

Our construction is consistent with the perceived intent of the municipal body, namely, to encourage property owners to invest in repairs rather than absorb the total loss of their property. Once the alternate remedy is elected, it cannot be arbitrarily withdrawn. We need not apply the doctrine of estoppel to grant the plaintiffs relief on this issue.

B.

Further, the Wigginses' forecast of evidence suggests that governmental immunity will not be a bar in this case.

Rollins' Immunity

[2] In *Pigott v. City of Wilmington*, 50 N.C. App. 401, 273 S.E. 2d 752, *cert. denied*, 303 N.C. 181, 280 S.E. 2d 453 (1981), this Court held that the chief building inspector for the City of Wilmington, in ordering the demolition of greenhouses which allegedly were not in compliance with the Wilmington building code, was a "public official" performing governmental duties involving the

exercise of judgment and discretion. Applying the *Pigott* analysis to the present facts, we hold that chief building inspector Rollins, in initially ordering the repair or demolition of the Wigginses' dwelling and in later complying with the City Council's 20 May 1980 ordinance, duties assigned to him by G.S. Sec. 160A-441 *et seq.* (1982) and by the Monroe City Code Sec. 9-1031 *et seq.* (Supp. 1979), was similarly a "public official" performing governmental duties involving the exercise of judgment and discretion.

Such a "public official" is immune from liability for "mere negligence" in the performance of those duties, but he is not shielded from liability if his alleged actions were "corrupt or malicious" of if "he acted outside of and beyond the scope of his duties." *Smith v. Hefner*, 235 N.C. 1, 7, 68 S.E. 2d 783, 787 (1952); *Pigott v. City of Wilmington.*

After reviewing the Wigginses' allegations in their pleadings and their forecast of evidence, we conclude that Rollins' motion for summary judgment was improperly granted. First, the Wigginses alleged in their Complaint that Rollins "wilfully, wantonly and maliciously ordered, supervised, and participated in the demolition of the property of the plaintiffs despite the obvious commencement of repairs. . . ." Second, the Wigginses' affidavits support their allegations — that Rollins directed them to repair the house within ten days, signed a building permit authorizing them to begin repairs, and then demolished the house after they had begun timely repairs. The affidavits tend to show that Rollins' behavior was corrupt or malicious or that he acted outside of and beyond the scope of his duties. Therefore, Rollins, on these facts, is not immune from liability.

### The City's Immunity

[3] Turning to the City's potential liability, we stress that, under the common law, a municipality is immune from liability for the torts of its officers committed while they were performing a governmental function. *Galligan v. Town of Chapel Hill*, 276 N.C. 172, 171 S.E. 2d 427 (1970); *Vaughn v. County of Durham*, 34 N.C. App. 416, 240 S.E. 2d 456 (1977), *disc. rev. denied*, 294 N.C. 188, 241 S.E. 2d 522 (1978). However, N.C. Gen. Stat. Sec. 160A-485(a) (1982) establishes an exception to the common-law rule:

Any city is authorized to waive its immunity from civil liability in tort by the act of purchasing liability insurance. Immunity shall be waived only to the extent that the city is indemnified by the insurance contract from tort liability. No formal action other than the purchase of liability insurance shall be required to waive tort immunity, and no city shall be deemed to have waived its tort immunity by any action other than the purchase of liability insurance.

*See generally* P. Harper, *Statutory Waiver of Municipal Immunity upon Purchase of Liability Insurance in North Carolina and the Municipal Liability Crisis*, 4 Campbell L. Rev. 41 (1981).

Included in the record on appeal is a Travelers Insurance Comprehensive General Liability Insurance Policy issued to the City of Monroe. The City asserts that, under the terms of its policy, it has not been indemnified against the intentional acts of its employees and, therefore, has not waived its immunity pursuant to G.S. Sec. 160A-485(a) (1982). In support of its motion for summary judgment, the City included a letter from Thomas L. Poe, a Travelers Insurance agent, denying coverage on the intentional act theory. We are not bound by the insurance company's interpretation of its own policy's coverage.

The Travelers Insurance policy provides, in pertinent part:

The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as damages because of

Coverage A. *bodily injury*

Coverage B. *property damage*

to which this insurance applies, caused by an occurrence. . . .

"Occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured*. . . ."

In *Edwards v. Akion*, 52 N.C. App. 688, 279 S.E. 2d 894, *aff'd per curiam*, 304 N.C. 585, 284 S.E. 2d 518 (1981), this Court held that an intentional assault committed by a city employee qualified as an "occurrence" under an identically-worded South Carolina In-

surance "occurrence" definition since the assault was neither intended nor expected by the City. This Court went on to hold in *City of Wilmington v. Pigott*, 64 N.C. App. 587, 307 S.E. 2d 857 (1983), *disc. rev. denied*, 310 N.C. 308, 312 S.E. 2d 650 (1984), that the acts of a public official merely exercising his discretion in the performance of his governmental duties did not constitute an "accident" within an identically-worded Travelers Insurance "occurrence" definition.

> The words 'accident' and 'accidental' have generally been held by the courts to mean 'that which happens by chance or fortuitously, without intention or design, and which is unexpected, unusual, and unforeseen.' 43 Am. Jur. 2d Insurance, Sec. 559; *Skillman v. Insurance Co.*, 258 N.C. 1, 7, 127 S.E. 2d 789, 793 (1962). We cannot label Inspector Rowan's order to the Pigotts to remove their greenhouses an 'accident.' The decision did not happen by chance and was not unexpected, unusual or unforeseen. It was certainly intended by the City that as chief building inspector Rowan would exercise his discretion to make these sorts of decisions as he saw fit.

*Id.* at 589, 307 S.E. 2d at 859. This Court had already ruled in the companion case, *Pigott v. City of Wilmington*, 50 N.C. App. 401, 273 S.E. 2d 752 (1981), discussed *supra*, that summary judgment was properly granted for the chief building inspector, absent allegations of corruption, malice, or exceeding the scope of his official duties. Thus, the 1983 case simply confirmed that the chief building inspector's conduct fell within the acceptable and foreseeable norms of official discretion. In the present case, however, the Wigginses' forecast of evidence that Rollins acted corruptly or with malice or exceeded the scope of his official authority, was sufficient to withstand Rollins' motion for summary judgment. By the same token, Rollins' alleged conduct, if proven, qualifies, under *Edwards v. Akion*, as an "occurrence," since it was "neither expected, nor intended from the standpoint of the [City] . . . ." *See generally Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 72 N.C. App. 80, --- S.E. 2d --- (1984) (subjective examination of intent or expectation controls).

Consequently, the liability insurance policy purchased by the City indemnifies the City from the torts alleged in the case at

Yassoo Enterprises, Inc. v. N. C. Joint Underwriting Assoc.

hand. We are persuaded that the City has waived its immunity from liability in tort on these facts.

### C.

Finally, the Wigginses assign error to the wordings of the 17 April 1980 order and the 20 May 1980 ordinance. As mentioned earlier, the Wigginses did not pursue any of the administrative remedies set forth in N.C. Gen. Stat. Sec. 160A-446(c) (1982). They are, therefore, barred from arguing this issue on appeal. *See Harrell v. City of Winston-Salem*, 22 N.C. App. 386, 206 S.E. 2d 802, *cert. denied*, 285 N.C. 757, 209 S.E. 2d 281 (1974).

### IV

For the reasons stated, summary judgment in favor of the defendants was erroneously granted. The trial court's order is therefore

Reversed.

Judges ARNOLD and WELLS concur.