LYNDA S. HERNDON, PLAINTIFF v. ACTING CHIEF JACKIE BARRETT; CAPTAIN BOB HAYES; SERGEANT JAMES CAMP AND THE CITY OF KINGS MOUNTAIN, A MUNICIPAL CORPORATION, DEFENDANTS AND THIRD-PARTY PLAINTIFFS v. DON JOHNSON AND GRAYTON BOLLINGER, THIRD-PARTY DEFENDANTS

No. 8927SC1397

(Filed 19 February 1991)

1. **Municipal Corporations § 12.3 (NCI3d)— claim of sovereign immunity — denied — immediately appealable**

The denial of a motion for summary judgment on the ground of sovereign immunity was immediately appealable in an action for negligent supervision arising from a fight between two police officers. N.C.G.S. § 1-277.

**Am Jur 2d, Municipal, County, School, and State Tort Liability § 651.**

2. **Municipal Corporations § 12.3 (NCI3d)— sovereign immunity — determination of insurance coverage**

The trial court correctly determined that there was insurance coverage and denied defendants' motion for summary judgment on the sovereign immunity issue in an action by a plaintiff injured in a fight between two policemen where defendants had submitted supporting affidavits to the trial court which showed that their carrier had written them stating that there was no insurance coverage; neither the Court of Appeals nor the trial court was bound by the insurance company's interpretation of its policy's coverage; the policy's exclusions for willful, intentional or malicious conduct under the

HERNDON v. BARRETT

[101 N.C. App. 636 (1991)]

section which applied to law enforcement employees did not apply here because plaintiff alleged that these defendants were negligent in their supervision of police officers; the exclusions for bodily injury or injury arising from false arrest, assault or battery, detention, imprisonment, malicious prosecution or abuse of process in the portion of the policy applicable to other public employees or officials also did not apply because this claim was based on negligent supervision; and, as to a defendant's counterclaim, the defendant conceded that there was no insurance coverage for punitive damages and the trial judge correctly denied summary judgment as to compensatory damages because defendants have not shown as a matter of law that coverage as to the compensatory damages claim did not exist under the policy.

**Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 59, 60, 694.**

3. **Municipal Corporations § 9.1 (NCI3d) — police officers — negligent supervision — summary judgment properly denied**

The trial court properly denied defendants' motion to dismiss an alternative motion for summary judgment in an action in which a plaintiff injured in a fight between two police officers alleged negligent supervision in that defendants had been informed about the hostility between the two officers in an earlier formal complaint and a Sergeant informed Officer Bollinger that his son had been taken by Officer Johnson to the Magistrate's Office and, at the same time, informed Johnson that Bollinger was on his way to the Magistrate's Office without taking any corrective action to defuse the situation or avoid the confrontation.

**Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 428, 429, 440.**

APPEAL by defendants from an order entered 28 August 1989 by *Judge Charles C. Lamm, Jr.* in CLEVELAND County Superior Court. Heard in the Court of Appeals 23 August 1990.

This action is based on injuries sustained by plaintiff on 27 January 1987 in a fight between Kings Mountain police officers Don Johnson and Grayton Bollinger, third-party defendants. Plaintiff is a Cleveland County Magistrate.

HERNDON v. BARRETT

[101 N.C. App. 636 (1991)]

Plaintiff's complaint alleged that the original defendants were negligent in failing to properly supervise the third-party defendant police officers. Plaintiff alleged that the City of Kings Mountain and the three supervising officers, acting Police Chief Jackie Barrett, Police Shift Captain Bob Hayes, and Police Shift Sergeant James Camp, were placed on notice of the likelihood of physical confrontation between Johnson and Bollinger by a formal complaint filed prior to 27 January 1987 and by their knowledge that Johnson had arrested Bollinger's son for allegedly running a red light and had handcuffed Bollinger's son after tussling with him over the incident. Sergeant Camp allegedly told Bollinger that his son, Phillip Bollinger, had been arrested and told Officer Johnson that Bollinger was on his way to the Magistrate's Office. Plaintiff alleged that defendants were negligent in that they failed to take any corrective action to "defuse the situation" between the two officers. Plaintiff alleged "[t]hat as a direct and proximate result of the joint and concurring negligence of the defendants as aforesaid the plaintiff was knocked back into a chair and severely and permanently injured, primarily in the area of her neck, back, arm, shoulder and hand" causing plaintiff to incur medical expenses, permanent injury and damages.

Defendants answered denying any negligence and asserting several affirmative defenses and brought a third-party complaint against Bollinger and Johnson. All counterclaims and cross-claims were subsequently answered by the appropriate parties. From defendants' brief we note that the City's liability insurance carrier, National Union Fire Insurance Company, was not a party to this action. On 8 March 1989 defendants filed a motion to dismiss plaintiff's claims and Bollinger's counterclaims with the exception of Bollinger's eleventh claim for wrongful discharge. Alternatively, defendants moved for summary judgment based on their contentions that defendants were exempted from liability by the doctrine of sovereign immunity, that sovereign immunity is waived only to the extent that the municipality is indemnified from tort liability by a liability insurance contract, and that insurance coverage had been denied by the City's carrier as to all causes of action with the exception of Bollinger's claim for wrongful discharge from employment. At the conclusion of the hearing on defendants' motion to dismiss and alternative motion for summary judgment, the trial court denied defendants' motion. Defendants appeal.

*Horn, West & Horn, P.A., by C. A. Horn, for plaintiff-appellee.*

*Malcolm B. McSpadden for third-party defendant-appellee, Grayton Bollinger.*

*Sumrell, Sugg, Carmichael & Ashton, P.A., by James R. Sugg and Rudolph A. Ashton, III, for defendant-appellants Acting Chief Jackie Barrett, Captain Bob Hayes, Sergeant James Camp and the City of Kings Mountain, and Corry, Cerwin & Coleman, by Clayward C. Corry, Jr., for defendant-appellant City of Kings Mountain.*

EAGLES, Judge.

[1] At the outset, we note that "G.S. 1-277, in effect, provides that no appeal lies to an appellate court from an interlocutory order or ruling of the trial judge unless such ruling or order deprives the appellant of a *substantial right* which he would lose if the ruling or order is not reviewed before final judgment." *Pruitt v. Williams*, 288 N.C. 368, 371, 218 S.E.2d 348, 350 (1975). "Generally, the denial of summary judgment does not affect a substantial right and is not appealable." *Corum v. University of North Carolina*, 97 N.C. App. 527, 531, 389 S.E.2d 596, 598, *temporary stay allowed*, 326 N.C. 595, 394 S.E.2d 453, *disc. rev. and writ of supersedeas allowed, motion to dismiss denied*, 327 N.C. 137, 394 S.E.2d 170 (1990). However, the denial of a motion for summary judgment "on the grounds of sovereign and qualified immunity is immediately appealable." *Id.* at 532, 389 S.E.2d at 599; *see also Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). "In *Mitchell*, the Supreme Court held that 'denial of a substantial claim of absolute immunity is an order appealable before final judgment, for the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action.'" *Id.* quoting *Mitchell*, 472 U.S. at 525, 105 S.Ct. at 2815, 86 L.Ed.2d at 424.

Here, defendants assert that the trial court denied defendants' motion to dismiss and alternative motion for summary judgment based on defendants' assertion of its sovereign immunity. Accordingly, defendants argue that they may immediately appeal the order and the adverse determination of the sovereign immunity issue.

[2] Defendants assign as error the trial court's determination that there was insurance coverage. Defendants contend that the deter-

mination was premature and erroneous. Defendants further contend that the trial court's ruling that there was insurance coverage was fundamentally unfair since National Union Fire Insurance Company (hereinafter National Union) was not before the court. Defendants also contend that the trial court could not affirmatively decide the jurisdiction issue of insurance coverage at this stage of the proceeding and as a result the trial court's decision affects a substantial right. Defendants argue that at the very most the trial court "should have found that a factual dispute existed as to insurance coverage, and then set the case on for further hearing at the trial or after the trial." We disagree.

> [U]nder the common law, a municipality is immune from liability for the torts of its officers committed while they were performing a governmental function. However, N.C. Gen. Stat. Sec. 160A-485(a) (1982) establishes an exception to the common-law rule: [Citations omitted.]
>
> Any city is authorized to waive its immunity from civil liability in tort by the act of purchasing liability insurance. Immunity shall be waived only to the extent that the city is indemnified by the insurance contract from tort liability. No formal action other than the purchase of liability insurance shall be required to waive tort immunity, and no city shall be deemed to have waived its tort immunity by any action other than the purchase of liability insurance. [Citations omitted.]

*Wiggins v. City of Monroe*, 73 N.C. App. 44, 49-50, 326 S.E.2d 39, 43 (1985).

This court has previously decided that a trial court's consideration of the existence or nonexistence of insurance coverage as it relates to the issue of sovereign immunity is not inappropriate at this stage in the trial proceeding. *Id.* at 44, 326 S.E.2d at 39. In *Wiggins* the trial court granted summary judgment in favor of municipal defendants. On appeal one issue was whether the insurance policy purchased by the City of Monroe indemnified the City from liability for the torts alleged in that action. The fact that the City of Monroe's insurance carrier was not a party to that particular suit did not deter the *Wiggins* court from addressing whether there was in fact liability coverage under the policy in question.

Here, like *Wiggins*, defendants' motion to dismiss and alternative motion for summary judgment were based upon governmental immunity. Here, defendants submitted supporting affidavits to the trial court which showed that their carrier had written them stating that there was no insurance coverage. Defendants contended in their motion that governmental immunity was not waived since it could only be waived to the extent that the municipality was indemnified from tort liability by the insurance contract. After careful review of the record, the trial court denied the defendant City's motion for summary judgment. The legal significance of the trial court's ruling is that defendants had not carried their burden of proving that there was no genuine issue of material fact as to the nonexistence of insurance coverage.

In *Wiggins*, the City of Monroe, in support of its motion for summary judgment, included a letter from its insurance carrier which denied insurance coverage for the damages sustained as a result of the City's demolition of the plaintiff's home. The *Wiggins* court stated that it was "not bound by the insurance company's interpretation of its own policy's coverage." *Wiggins*, 73 N.C. App. at 50, 326 S.E.2d at 44.

Likewise, neither we nor the trial court are bound by National Union's interpretation of its policy's coverage. The National Union policy contains the following pertinent provisions: Coverage A, which applies to law enforcement employees only, provides that "[t]he company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as money damages because of any claim against the Insured, arising out of any Wrongful Act of the Insured acting in the Insured's capacity as a Law Enforcement Employee of the Employer, named in the Declarations, and caused by the Insured, while acting in their regular course of duty." Coverage B of the policy applies to all public employees/ officials except for law enforcement employees and provides essentially the same coverage. The policy further provides in the exclusions applicable to Coverage A that it "applies to all Wrongful Acts, which shall mean any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty including misfeasance, malfeasance and nonfeasance by an insured while acting within the scope of his professional duties for the employer . . . ." In the exclusions applicable to Coverage B the policy provides that it does not apply to any claim related to injury arising from "bodily injury," "false arrest, assault or

battery, detention, imprisonment, malicious prosecution or abuse of process," and "willful violation of any statute, ordinance, or regulation committed by or with the knowledge or consent of any Insured."

In the instant case the policy provides coverage for all "Wrongful Acts" which includes negligence and breach of duty. Plaintiff has alleged that defendants were negligent in failing "to take any corrective action to defuse the situation between Officers Johnson and Bollinger" after being aware that the two officers were hostile toward one another and that a confrontation was likely to occur after Officer Johnson's arrest of Phillip Bollinger. While defendants' liability to plaintiff arose from the actions of Officers Johnson and Bollinger, plaintiff sued defendants based on their negligent performance of their supervisory duties.

With respect to defendants Barrett, Hayes, and Camp, their negligence, if any, was insured under Coverage A of the policy. The exclusions applicable to Coverage A of the policy would involve "claims or injury arising out of the willful, intentional or malicious conduct of any Insured." Here plaintiff's allegations against these defendants did not relate to any "willful, intentional or malicious conduct" by them. Here plaintiff alleged that these defendants were negligent in their supervision of Officers Johnson and Bollinger. With respect to the City of Kings Mountain, its negligence, if any, was insured under Coverage B of the policy. The exclusions applicable would apply to claims for "bodily injury" or injury arising from "false arrest, assault or battery, detention, imprisonment, malicious prosecution or abuse of process." Plaintiff's cause of action against the City of Kings Mountain is also based on negligent supervision. Contrary to defendants' argument, plaintiff's claim does not arise from assault or battery. With respect to the "bodily injury" exclusion, plaintiff's claim is for money damages suffered as a result of defendant City's negligent supervision of the two officers.

We also note that the trial court denied defendants' motion with respect to third-party defendant Bollinger's counterclaims. In his brief, third-party defendant Bollinger concedes that there is no cause of action and no insurance coverage for punitive damages against the City of Kings Mountain. However, with respect to Bollinger's counterclaim for compensatory damages, the trial court did not err in denying defendants' motion for summary judgment.

Here at the summary judgment hearing, defendants have not shown as a matter of law that coverage as to Bollinger's compensatory damages claim did not exist under the policy. Accordingly, this assignment of error is overruled.

**[3]** Defendants next assign as error the trial court's denial of their motion to dismiss and alternative motion for summary judgment. In their brief, defendants argue that "[a] review of the Plaintiff's complaint indicates that there are no allegations that the Defendants knew or should have known that a personal fight would actually occur between Officer Johnson and Officer Bollinger; nor are there any allegations that the Defendants knew or should have known that the Plaintiff might intervene; nor are there any allegations that the Defendants knew or should have known that the Plaintiff might have been injured as a result of an apparent feud between Officers Johnson and Bollinger." Defendants also contend that a review of the record discloses that Johnson and Bollinger were not acting within their regular course of duty as required for coverage under the insurance policy when the fight ensued. Defendants argue that *Edwards v. Akion*, 52 N.C. App. 688, 279 S.E.2d 894, *aff'd*, 304 N.C. 585, 284 S.E.2d 518 (1981), is distinguishable. We disagree.

"A complaint should be dismissed for failure to state a claim where it is apparent that plaintiff (cross and counterclaimant under our facts) is entitled to no relief under any statement of facts which could be proven, more specifically, when there is an absence of law to support the claim asserted, a want of facts sufficient to establish a good claim, or some defense which will necessarily defeat the claim." *Brawley v. Brawley*, 87 N.C. App. 545, 552, 361 S.E.2d 759, 763 (1987), *disc. rev. denied*, 321 N.C. 471, 364 S.E.2d 918 (1988).

"Strictly speaking, the concept of negligence is composed of two elements: legal duty and a failure to exercise due care in the performance of that legal duty. Due care always means the care an ordinarily prudent person would exercise under the same or similar circumstances when charged with a legal duty. What is meant by legal duty, however, varies according to subject matter and relationships." *O'Connor v. Corbett Lumber Corp.*, 84 N.C. App. 178, 181, 352 S.E.2d 267, 270 (1987). [Citations omitted.]

Here, in her complaint plaintiff alleged that defendants had knowledge of the hostility between Bollinger and Johnson but

neglected to take any action to avoid confrontation between them. Given the evidence of alleged prior threats by Johnson against Bollinger in the formal complaint that was filed, defendants may have had a duty as supervisors to defuse the situation between the two officers. Plaintiffs have alleged sufficient facts to withstand a motion to dismiss. With respect to Bollinger's counterclaims, we believe that there are sufficient facts alleged to withstand third-party plaintiffs' motion to dismiss.

In *Edwards*, 52 N.C. App. 688, 279 S.E.2d 894, plaintiff brought an action seeking compensatory and punitive damages for personal injuries sustained during an altercation with a City of Raleigh employee. Plaintiff and defendant Akion argued about defendant Akion's method of refuse collection from plaintiff's residence. Plaintiff was knocked to the ground twice and was injured. Plaintiff sought to recover against the City on two theories. First, she sought to recover based upon the theory that defendant Akion committed an assault and battery upon her while acting within the scope of his employment. Second, plaintiff sought to recover on the grounds that the City negligently supervised defendant Akion which proximately caused her injuries. The trial court granted summary judgment in favor of the City.

In *Edwards,* this court stated that

[w]hen there is a dispute as to what the employee was actually doing at the time the tort was committed, all doubt must be resolved in favor of liability and the facts must be determined by the jury. The doctrine should be applied liberally, especially where the business involves a duty to the public, and the courts should be slow to assume a deviation from the duties of employment. In this case, the facts surrounding the incident are not unequivocal, and a jury should determine whether the alleged assault arose out of personal animosity or an effort by Akion to accomplish the duties assigned him.

*Id.* at 698, 279 S.E.2d at 900.

In the instant case, in Bollinger's response to defendants' motion to dismiss and alternative motion for summary judgment, Bollinger submitted an excerpt from Johnson's deposition taken on 7 April 1988. Johnson testified that he was waiting in the lobby outside the Magistrate's Office with Bollinger's son when he was approached by Bollinger. Johnson also testified that before Bollinger

**HERNDON v. BARRETT**

[101 N.C. App. 636 (1991)]

struck him Bollinger shook some papers in his face and said "that I had stepped over the line and went too far this time and that he had the evidence right there on paper that was going to cost me my job." He stated that Bollinger then "took his knee and kicked me (Johnson) in the groin." Johnson testified that he then began to defend himself. While there is evidence of personal animosity between Johnson and Bollinger, whether the altercation arose out of personal animosity or while Johnson was acting within the scope of his duty is a jury question. Defendants' contention otherwise is unpersuasive here.

Similarly, the question of defendants' negligence in preventing the altercation is also a jury question. See *Edwards*, 52 N.C. App. 688, 279 S.E.2d 894. Defendants argue that *Edwards* is inapplicable because Akion's supervisor was present during the *Edwards* altercation. We are not persuaded.

Here, plaintiff alleged in her complaint that defendants had been informed about the hostility between Johnson and Bollinger in an earlier formal complaint. On the day in question Sergeant Camp informed Bollinger that his son had been taken by Johnson to the Magistrate's Office and at the same time informed Johnson that Bollinger was on his way to the Magistrate's Office without taking any corrective action to defuse the situation or avoid confrontation between the two officers. In its answer, the City denied these allegations. Defendants failed to show that they are entitled to summary judgment since a genuine issue of material fact exists with respect to their liability.

Accordingly, the trial court's decision is affirmed.

Affirmed.

Judges WELLS and LEWIS concur.