**Buford T. MYERS, Plaintiff,**

**v.**

**TOWN OF LANDIS; and Gene R. Beaver in his official capacity as Mayor of the Town of Landis, and in his individual capacity, Defendants.**

**Civil No. 4:94CV700.**

United States District Court,
M.D. North Carolina,
Salisbury Division.

March 22, 1996.

Robert M. Elliot, Elliot, Pishko, Gelbin & Morgan, P.A., Winston–Salem, NC, for Plaintiff.

Allan R. Gitter, James Redfern Morgan, Jr., Womble Carlyle Sandridge & Rice, Winston–Salem, NC, for Defendants.

### MEMORANDUM OPINION

BULLOCK, Chief Judge.

This is a suit by Buford T. Myers against the Town of Landis, North Carolina and its Mayor, Gene Beaver. Myers used to work for the town, and he alleges that he was fired in retaliation for exercise of his right to free speech. He asserts several claims under federal and state law. Now before the court are Myers's motion for leave to amend his complaint and the motion of all defendants for summary judgment. For the reasons discussed in this memorandum opinion, Myers's motion for leave to amend will be granted, and the defendants' motion for summary judgment will be granted in part and denied in part.

### BACKGROUND

The following facts are undisputed. Until April 1994, Buford T. Myers, the plaintiff, worked for the town of Landis, North Carolina. Myers held several positions at different times, including laborer and mechanic. On August 3, 1989, while Myers was the town's mechanic, he spoke to an agent of the North Carolina State Bureau of Investigation ("SBI") regarding allegations that the Mayor of Landis, Gene R. Beaver, had illegally taken town property for his own use and had improperly directed town workers to do projects for the benefit of private persons (including Mayor Beaver) on town time. The investigation closed without any charges being brought against Mayor Beaver.

Another town employee who spoke to the SBI agent regarding the allegations against Mayor Beaver was Willie Deadmon, Director of Public Works for the Town of Landis. About a month after Deadmon spoke with the SBI agent, the town board voted to fire Deadmon, purportedly for having been rude to citizens of Landis while performing his duties. Myers believed that the real reason for Deadmon's termination was Deadmon's cooperation with the SBI's investigation of the Mayor. Myers wrote a statement attacking what he saw as the "railroading" of Deadmon and complaining about the town's treatment of its employees and cuts in their benefits. Besides Myers, eleven other employees of Landis signed the statement and Myers read the statement aloud at a meeting of the town board on September 5, 1989.

In the years that followed these incidents, Myers suffered a series of reverses related to his employment. In the fall of 1990, Myers was transferred from his job as a mechanic to a laborer's duties. The transfer did not then mean a cut in pay. Roughly a year later, however, Myers suffered a pay cut from $12.68 per hour to $7.03 because of a town-wide reclassification of jobs. Myers had varying duties as a laborer, and by the spring of 1994, Myers had been assigned to the mowing detail. Finally, on March 7, 1994, the town board voted to hire a private company to cut the grass, and Myers consequently lost his job. This suit followed.

### ANALYSIS

Myers alleges violations of his right to free speech under the First and Fourteenth Amendments to the Constitution of the Unit-

ed States and his right to substantive due process under the Fourteenth Amendment. He also alleges violations of his rights to free speech and substantive due process under the Constitution of North Carolina and wrongful discharge under state law. The defendants have moved for summary judgment on all of Myers's claims.

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it could affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

### 1. *Federal Right to Free Speech*

Myers claims that he suffered a pay cut and lost his job because of his protected speech to the SBI agent and before the town board. He seeks damages from Mayor Beaver in his individual and official capacities and from the Town itself. The defendants say that Myers has failed to establish a genuine issue of material fact such that this claim should go to the jury. Further, Mayor Beaver asserts the defense of qualified immunity from damages in his individual capacity and the Town asserts that it is immune from punitive damages. The court will address these arguments in turn.

#### a. *Violation of Substantive Right*

[1, 2] Because of the First Amendment, which applies to the states through the Fourteenth Amendment, *e.g., McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, —— n. 1, 115 S.Ct. 1511, 1514 n. 1, 131 L.Ed.2d 426 (1995), a state or local government may not fire or otherwise retaliate against one of its employees for exercise of his right to free speech. *Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968); *DiMeglio v. Haines,* 45 F.3d 790, 804 (4th Cir.1995). However, because a state has an interest in ensuring that its employees provide effective services to its citizens,

the state may subject its employees to restraints that it could not apply to citizens in general. *See Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734. Under *Pickering* and the cases that have followed it, a state employee's speech on a matter of public concern is protected if the employee's interest in speaking outweighs the state's interest as an employer in promoting the efficient delivery of public services. *Id.*

The Fourth Circuit has explained how to do the balancing that *Pickering* requires.

> [The court] must first determine whether [the plaintiff's] speech involved an issue of public concern. If the speech regarded an issue of public concern, [the court should] next determine whether [the plaintiff] would have been dismissed "but for" [his] protected speech. Finally, we decide whether [the plaintiff's] exercise of free speech is outweighed by the [state's countervailing interest in providing effective service].

*Hall v. Marion Sch. Dist. No. 2,* 31 F.3d 183, 192 (4th Cir.1994) (citations omitted).

#### i. *Public Concern*

■ For speech to be on a matter of public concern, it must relate to a "matter of political, social, or other concern to the community." *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983). In contrast, an employee's personal grievances about his employment are not matters of public concern. *Daniels v. Quinn,* 801 F.2d 687, 690 (4th Cir.1986). The proper classification depends on whether the employee was speaking as a citizen or as an employee, *DiMeglio,* 45 F.3d at 805, and the inquiry is one of law, *Connick,* 461 U.S. at 148 n. 7, 103 S.Ct. at 1690 n. 7.

■ Myers claims that his transfer, pay cut, and ultimate discharge were in retaliation for his meeting with an agent of the SBI and for reading his statement to the Town Board. Both events involved speech on matters of public concern. When Myers met the SBI agent, Myers accused Mayor Beaver of taking city property for his own use and of having town employees work for the benefit of individual citizens (including the Mayor

himself) on town time. (SBI Report.) Accusing the highest elected town official of a breach of public trust and criminal wrongdoing is speech on a matter of public concern. *See Connick*, 461 U.S. at 149, 103 S.Ct. at 1691; *Davis v. Ector County*, 40 F.3d 777, 782 (5th Cir.1994) ("There is perhaps no subset of 'matters of public concern' more important than bringing official misconduct to light."). The speech is of public concern despite being made privately to the SBI agent. *Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 415–16, 99 S.Ct. 693, 696–97, 58 L.Ed.2d 619 (1979); *Maciariello v. Sumner*, 973 F.2d 295, 299 (4th Cir.1992), *cert. denied*, 506 U.S. 1080, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993).

Myers's statement before the Town Board also touched on a matter of public concern, despite the defendants' argument to the contrary. Much of the statement did consist of generalized grievances about benefits and working conditions, and these grievances are not protected. *Connick*, 461 U.S. at 148, 103 S.Ct. at 1690. However, the statement began with an accusation that Willie Deadmon was "being railroaded on a bunch of dreamed up charges" in retaliation for his participation in the SBI's investigation of Mayor Beaver. (Def.Ex. f at 1.) An allegation that a public official has tried to cover up wrongdoing by retaliating against a whistleblower is itself an accusation of significant wrongdoing and a matter of public concern.

ii. *Causation*

The defendants assert that they are entitled to summary judgment because, they say, Myers has failed to adduce evidence that he was fired because of his statements. The structure for this part of the inquiry is controlled by the Supreme Court's decision in *Mt. Healthy City School District*

*Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The plaintiff has the initial burden of showing that his protected speech was a "substantial" or "motivating" factor behind his discharge. *Id.* at 287, 97 S.Ct. at 576. If the plaintiff makes this showing, the defendant can still escape liability by showing that the plaintiff would have been discharged even without the impermissible motive. *Id.*

Myers's evidence creates a triable issue of the cause of his discharge. In the five years following his statements, Myers was first transferred,[1] then given a pay cut, and ultimately discharged. Although the time span seems to rebut any inference that Myers's speech motivated these actions, Myers has produced evidence probative of ongoing animus.

Myers offers witnesses to several statements by Mayor Beaver to the effect that Beaver intended to have Myers fired. According to James Upright, a former employee of the Town of Landis, Mayor Beaver repeatedly said that he wanted to "get rid of" Myers. (Upright Aff., Pl.Ex. 3 at ¶ 6.) Another former town employee, Bobby Ray Smith, says that at various times after the town meeting, Mayor Beaver said that he wanted to fire Myers; the Mayor said things like: "I am going to get rid of B.T. Myers the first chance I get. I'm going to make an example of him." (Smith Aff., Pl.Ex. 4 at ¶ 7.) Smith also claims to have heard Mayor Beaver and Bobby Wood, who had then been promoted to Director of Public Works to replace Willie Deadmon, say they wanted to get rid of Myers because he was a "troublemaker." *Id.* at ¶ 9. Viewed most favorably toward the plaintiff, this evidence would allow a finding that Mayor Beaver retaliated against Myers.

1. The defendants assert that the transfer cannot give rise to a cause of action because it took place more than three years before Myers filed this action. Under *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), claims under § 1983 must be filed within the time allowed by the state statute of limitations for personal injuries. *Id.* at 276, 105 S.Ct. at 1947. In North Carolina, such suits must be filed within three years of accrual of the cause of action. N.C.Gen.Stat. § 1–52(16) (1991). Thus, a claim that Myers was transferred from his duties as a mechanic in retaliation for his protected speech would be barred. However, this does not affect the validity of Myers's claims that he suffered a cut in pay and was eventually discharged because of his protected speech. *Lendo v. Garrett County Bd. of Educ.*, 820 F.2d 1365, 1368 (4th Cir.1987).

After Myers was transferred from the mechanic's shop, but before the reclassification of jobs resulted in Myers's pay cut, Smith says that Mayor Beaver said, "We have already sent him back to labor. We're going to cut his pay." *Id.* at ¶ 8. Perhaps the strongest evidence supporting an inference of improper motivation is the deposition testimony of Michael Dennis Brown, who was on the Town Board when it voted to hire a private company to mow grass. According to Brown, the Mayor said in executive session, "Well, we need to do something about the mowing because B.T.'s on the mowing crew and he's a troublemaker." (M.D. Brown Depo., Pl.Ex. 14 at 23.) Mayor Beaver expressed these sentiments repeatedly during the executive session, and, Brown says, was "driven" to contract out the mowing in part by a desire to get rid of B.T. Myers. *Id.* at 23–24. Although precisely what Beaver meant by "troublemaker" is disputable, such a dispute is to be resolved by the trier of fact, not on a motion for summary judgment.

The defendants try to rebut the showing of causation by pointing out that Mayor Beaver, acting alone, did not have authority to reclassify Myers, to approve the mowing contract, or to discharge Myers. The personnel ordinance for the Town of Landis gives the Town Clerk the responsibility to develop a plan for classifying Town employees and to submit that plan to the Town Board for approval. (Def.Ex. d Art. IV.) Further, the Town Board approved the mowing contract and instructed A.B. Patterson, then the Director of Public Works, and Bobby Wood, by then the Town Clerk, to decide who would be laid off. (Bobby Wood Dep. at 134.) However, the record contains testimony that the Mayor had substantial power to get both the Town Board and Bobby Wood to do what the Mayor wanted.[2] (Pl.Ex. 14 at 35–36) (saying Wood usually went along with Beaver because of their close political relationship); *Id.* at 11 (expressing belief that earlier Boards were heavily influenced by Beaver); (Dead-

mon Aff., Pl.Ex. 2 at ¶ 12) (saying board usually did what Mayor wanted).

Trying to show that Myers would have been discharged anyway, the Town points out that contracting out the mowing saved the Town a lot of money. (Wood Dep. at 31.) However, as already discussed, contracting out the mowing did not necessarily mean that Myers would be fired. The evidence would permit a jury to find that the Board approved the contract knowing that Mayor Beaver would use it as an excuse to have Myers fired and did nothing to prevent the illegal retaliation. *Cf. Hall,* 31 F.3d at 196 (holding that School Board ratified superintendent's conduct where it knew of improper plan to fire teacher, did nothing to intervene, and approved firing).

iii. *The State's Interest in Effective Provision of Services*

Even if a public employee speaks on a matter of public concern, his speech will not be protected if it sufficiently impairs his employer's interest "in promoting the efficiency of the public services it performs through its employees." *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734; *see also Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 2899, 97 L.Ed.2d 315 (1987) ("[T]he state interest element of the test focuses on the effective functioning of the public employer's enterprise."). Speech may impair efficiency by disrupting the office, undermining the authority of supervisors, or destroying close working relationships. *See Connick,* 461 U.S. at 154, 103 S.Ct. at 1694. Further, the employer does not need to prove that the agency's efficiency or morale has actually been impaired, but only that such damage is reasonably to be apprehended. *Jurgensen v. Fairfax County,* 745 F.2d 868, 879 (4th Cir.1984). *But cf. Rankin,* 483 U.S. at 389, 107 S.Ct. at 2899 ("[T]here is no evidence that [plaintiff's speech] interfered with the efficient functioning of the office."). The balancing of the employee's and employer's interests is a question of law for the court. *Joyner v. Lancaster,* 815 F.2d

---

**2.** This evidence of bias on the part of the Town Board precludes granting summary judgment as to the liability of the Town or of Mayor Beaver in his official capacity, which amounts to the same

thing. *See Hall,* 31 F.3d at 196. The defendants do not suggest that the Town Board is not the final policymaking authority for the Town of Landis.

20, 23 (4th Cir.), *cert. denied,* 484 U.S. 830, 108 S.Ct. 102, 98 L.Ed.2d 62 (1987).

Here, nothing suggests that any impairment of any governmental function was reasonably apprehended. The relationship between the Mayor of a town and one of the town's mechanics or waste collectors is hardly a "close working relationship[ ] . . . essential to fulfilling public responsibilities." *See Connick,* 461 U.S. at 151–52, 103 S.Ct. at 1692. Although Myers's accusations might reasonably be thought to cause disagreements among employees, Myers's speech was protected absent a reason to expect actual disruption of services. *Cf. Hall,* 31 F.3d at 194 (holding plaintiff teacher's speech protected even though it led twenty out of twenty-five other teachers to petition for plaintiff's transfer). This record suggests no such reason.

b. *Qualified Immunity*

 Mayor Beaver has asserted qualified immunity as a defense to personal liability. Qualified immunity protects an official from liability in his individual capacity except where a reasonable officer in the defendant's position would know that he was violating the plaintiff's rights. *DiMeglio,* 45 F.3d at 794–95 n. 1. The test is purely objective: "immunity shields officials 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 794 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).

 The right of a public employee to be free from retaliation for protected speech is "clearly established." *Hughes v. Bedsole,* 48 F.3d 1376, 1385 (4th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 190, 133 L.Ed.2d 126 (1995); *Wagner v. Wheeler,* 13 F.3d 86, 90 (4th Cir.1993). However, the qualified immunity inquiry is not done at the level of abstract rights, but at the level of application to the concrete facts of the case. *DiMeglio,* 45 F.3d at 803. Accordingly, the inquiry for this court becomes: "In 1991 (when Myers suffered a pay cut) and in 1994 (when Myers was discharged), was it clearly established that Myers could not be subjected to adverse action because of his speech to the SBI agent and at the Town Board meeting?" *See id.* at 804. Because this court holds that such a right was clearly established at those times and that no reasonable official could have believed that retaliation against Myers for his speech was permissible, Defendant Beaver's motion for summary judgment on the ground of qualified immunity will be denied.

This right was clearly established even though it was the result of applying the *Pickering* balancing test. The Fourth Circuit has said that where the existence of a right depends on a balancing test, as in *Pickering,* such a right will rarely be "clearly established." *DiMeglio,* 45 F.3d at 806. However, "rarely" does not mean "never." *See, e.g., Reuber v. Food Chem. News, Inc.,* 899 F.2d 271, 287–88 (4th Cir.) (denying qualified immunity because no reasonable official could have thought speech was not protected), *reh'g granted, vacated on other grounds,* 922 F.2d 197 (4th Cir.1990). The ultimate issue remains whether "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

Here, the public interest in Myers's speech was very strong. Myers told a state law enforcement officer during an official investigation that he believed that Mayor Beaver had engaged in criminal misconduct. Myers further spoke at a Town Board meeting to protest what he believed was an attempt to hinder that investigation by firing the head of the Department of Public Works. Such speech about elected officials implicates core First Amendment values. Moreover, as discussed above, the record is devoid of anything that would suggest that Myers's speech actually hindered any municipal function or had the potential to do so. When the interest in speech is this strong, and there is no evidence of a threat to the government agency's mission, no reasonable official can conclude that the speech is not protected. *See Kincade v. City of Blue Springs,* 64 F.3d 389, 398–99 (8th Cir.1995). Mayor Beaver thus is not immune from damages in his individual capacity.

#### c. *Punitive Damages*

All defendants have moved for summary judgment as to liability for punitive damages resulting from this claim. Although a municipality can be liable for compensatory damages arising out of a violation of an individual's constitutional rights, municipalities are not subject to punitive damages in actions under § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981). Thus, summary judgment on punitive damages will be granted for the Town of Landis and for Mayor Beaver in his official capacity. In contrast, the trier of fact can award punitive damages against an official sued in his individual capacity when the illegal action was motivated by an evil motive or intent, or when the violation involves reckless or callous indifference to federal rights. *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). Here, the evidence creates an issue as to Mayor Beaver's intent, so summary judgment as to this part of Myers's First Amendment claim will be denied.

#### 2. *Federal Substantive Due Process*

Myers claims that his discharge also violated his substantive due process rights under the Fourteenth Amendment to the Constitution. To the extent that this claim is based on an alleged violation of his right to free speech, the claim is identical to, and subsumed under, his claim that his discharge violated his rights under the First Amendment. *See Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 813, 127 L.Ed.2d 114 (1994) (plurality opinion); *Wilkes v. Young*, 28 F.3d 1362, 1364 n. 2 (4th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1103, 130 L.Ed.2d 1069 (1995). Other than that, any right that Myers may have had to continued employment with the Town of Landis is not protected by substantive due process. Substantive due process protects fundamental rights created by the Constitution. *Huang v. Board of Governors of Univ. of N.C.*, 902 F.2d 1134, 1142 n. 10 (4th Cir.1990) (citing *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229–30, 106 S.Ct. 507, 515–16, 88 L.Ed.2d 523 (1985) (Powell, J., concur-

ring)). Myers's right to his job, if any, was created by state contract law, and does not implicate substantive due process. *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc), *cert. denied,* 513 U.S. 1110, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995); *see Huang,* 902 F.2d at 1142 n. 10. Summary judgment for all defendants on this claim will thus be granted.

#### 3. *State Constitutional Claims*

A public employee who suffers retaliation for his protected speech has a cause of action against his employer directly under Article I, section 14 of the Constitution of North Carolina. *Corum v. University of N.C.*, 330 N.C. 761, 786, 413 S.E.2d 276, 292, *cert. denied,* 506 U.S. 985, 113 S.Ct. 493, 121 L.Ed.2d 431 (1992). When a plaintiff makes such a claim against a public agency or against a public employee acting in his official capacity, the analysis is the same as that under § 1983. *See Lenzer v. Flaherty,* 106 N.C.App. 496, 515, 418 S.E.2d 276, 288, *disc. rev. denied,* 332 N.C. 345, 421 S.E.2d 348 (1992). Sovereign immunity does not bar any such suit. *Corum,* 330 N.C. at 785–86, 413 S.E.2d at 291–92. However, the state constitution does not create a right to recover against a public employee in his individual capacity. *Id.* at 788, 413 S.E.2d at 293. Thus, the defendants' motions for summary judgment on Myers's claim under the state constitution's free speech clause will be granted as to Mayor Beaver in his individual capacity and denied as to Mayor Beaver in his official capacity and to the Town of Landis.

The defendants have moved for summary judgment on plaintiff's claim that they violated his right to substantive due process under the North Carolina Constitution. The Supreme Court of North Carolina has held that the "law of the land" clause of the state constitution, Art. I, § 19, has the same meaning and effect as the Due Process clause of the Federal Constitution. *McNeill v. Harnett County,* 327 N.C. 552, 563, 398 S.E.2d 475, 481 (1990). Thus, for the reasons discussed in connection with Myers's federal right to substantive due process, the court

will grant summary judgment for all defendants on this claim.

### 4. Wrongful Discharge in Violation of Public Policy

Myers's final claim is that his discharge was illegal as against the public policy of North Carolina. *See Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 355, 416 S.E.2d 166, 170 (1992). In *Amos,* the Supreme Court of North Carolina said that "at the very least public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes." 331 N.C. at 353, 416 S.E.2d at 169. Based on this statement, the North Carolina Court of Appeals has held that discharge in retaliation for speech protected by the North Carolina Constitution violates the public policy of North Carolina. *Lenzer,* 106 N.C.App. at 514–15, 418 S.E.2d at 287.

The Town of Landis has moved for summary judgment on the ground of sovereign immunity. A town is not liable for the torts of its agents or employees except to the extent the town waives immunity by buying insurance. *Wiggins v. City of Monroe,* 73 N.C.App. 44, 49–50, 326 S.E.2d 39, 43 (1985). This immunity extends to employees of the town sued in their official capacities. *Whitaker v. Clark,* 109 N.C.App. 379, 381–82, 427 S.E.2d 142, 143–44, *disc. rev. denied,* 333 N.C. 795, 431 S.E.2d 31 (1993).

To state a claim against a town or its employees in their official capacities, the plaintiff must allege that the town has bought insurance and waived its immunity. *Whitaker,* 109 N.C.App. at 384, 427 S.E.2d at 145. The Town of Landis and Mayor Beaver have moved for summary judgment on the ground that Myers has failed to allege this waiver. Myers has moved to amend his complaint to make this allegation and has produced copies of the Town's insurance policies. Considering the strong favor with which the federal rules regard motions to amend, *see, e.g., Medigen of Ky., Inc. v. Public Serv. Comm'n,* 985 F.2d 164, 167–68 (4th Cir.1993), and the lack of significant prejudice to the

defendants, Myers's motion to amend his complaint will be granted. Because of the amendment and the evidence of waiver, the claim against the Town and Mayor Beaver in his official capacity may proceed.[3]

Finally, defendants make two arguments that Mayor Beaver is not liable in his individual capacity. First, citing *Sides v. Duke University,* 74 N.C.App. 331, 328 S.E.2d 818, *disc. rev. denied,* 314 N.C. 331, 333 S.E.2d 490 (1985), defendants assert that an action for wrongful discharge will lie against Myers's employer only, and since Myers worked for Landis, not for its Mayor, defendants say that the Mayor is not liable. Second, defendants cite several cases for the proposition that Mayor Beaver is not personally liable for actions related to his official duties.

Defendants' first argument is persuasive. The North Carolina Court of Appeals has held that an action for wrongful discharge will lie only against an employer, and not against individual employees. *Id.* at 343, 328 S.E.2d at 826–27. Although some courts have allowed wrongful discharge claims against officers of the employer to stand, they have done so without explicitly considering this issue. *E.g., Amos,* 331 N.C. at 354, 416 S.E.2d at 170; *Lenzer,* 106 N.C.App. at 514, 418 S.E.2d at 287. Moreover, the courts that *have* considered this issue have followed *Sides. Phillips v. J.P. Stevens & Co.,* 827 F.Supp. 349, 353 (M.D.N.C.1993); *Williams v. Vogler,* No. 6:91CV00637, 1993 WL 402900, at *2 (M.D.N.C. March 6, 1993). Plaintiff offers no compelling reason to disregard this precedent, and, accordingly, this court holds that Mayor Beaver is not individually liable to Plaintiff on the wrongful discharge claim.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

### ORDER and JUDGMENT

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

---

3. The parties have not discussed whether the insurance policies cover Myers's claims. For

purposes of this motion, the court will assume that they do.

772

IT IS **ORDERED** that Plaintiff's motion to amend his complaint is **GRANTED.**

IT IS **ORDERED AND ADJUDGED** that Defendants' motion for summary judgment as to the substantive due process claim under federal law as set forth in the complaint as Plaintiff's Second Claim for Relief is **GRANTED,** and this claim is **DISMISSED;** and

IT IS **FURTHER ORDERED AND ADJUDGED** that Defendants' motion for summary judgment as to the claim for violation of Plaintiff's right to free speech under the North Carolina Constitution as set forth in the complaint as Plaintiff's Fourth Claim for Relief is **GRANTED** as to Gene R. Beaver in his individual capacity, and this claim is **DISMISSED** as to Gene R. Beaver in his individual capacity; and

IT IS **FURTHER ORDERED AND ADJUDGED** that Defendants' motion for summary judgment as to the substantive due process claim under state law as set forth in the complaint as Plaintiff's Fifth Claim for Relief is **GRANTED,** and this claim is **DISMISSED;** and

IT IS **FURTHER ORDERED AND ADJUDGED** that Defendants' motion for summary judgment as to the claim for wrongful discharge in violation of the public policy of North Carolina as set forth in the complaint as Plaintiff's Seventh Claim for Relief is **GRANTED** as to Gene R. Beaver in his individual capacity, and this claim is **DISMISSED** as to Gene R. Beaver in his individual capacity; and

IT IS **FURTHER ORDERED** that Defendants' motion for summary judgment as to the claim for violation of Plaintiff's right to free speech under the Constitution of the United States as set forth in the complaint as Plaintiff's First Claim for Relief is **DENIED.**

IT IS **FURTHER ORDERED** that Defendants' motion for summary judgment as to the claim for violation of Plaintiff's right to free speech under the North Carolina Constitution as set forth in the complaint as Plaintiff's Fourth Claim for Relief is **DENIED** as to the Town of Landis and as to Gene R. Beaver in his official capacity as Mayor of the Town of Landis; and

IT IS **FURTHER ORDERED** that Defendants' motion for summary judgment as to the claim for wrongful discharge in violation of the public policy of North Carolina as set forth in the complaint as Plaintiff's Seventh Claim for Relief is **DENIED** as to the Town of Landis and as to Gene R. Beaver in his official capacity as Mayor of the Town of Landis; and

IT IS **FURTHER ORDERED AND ADJUDGED** that, pursuant to Plaintiff's stipulation in his brief, Plaintiff's claim for violation of his right to procedural due process under the Constitution of the United States, Plaintiff's claim for violation of his right to procedural due process under the Constitution of North Carolina, and Plaintiff's claim for conspiracy under 42 U.S.C. § 1985 be, and the same hereby are, **DISMISSED** with prejudice.