J. TAYLOR UZZELL, JR., RICHARD M. HAGER, BUSINESS AND ESTATE CONSERVATION, INC. D/B/A BEC, INC. v. INTEGON LIFE INSURANCE CORPORATION, LEONARD T. TIPPETT, ROBERT L. BRANTLEY

No. 8511SC117

(Filed 17 December 1985)

1. **Insurance § 2; Fraud § 3— termination of insurance agency contract—no false representation**

The trial court properly entered summary judgment for defendants in plaintiffs' claim based on fraud and misrepresentations which induced them to terminate their old agency contracts, sacrifice substantial benefits, and enter into new agency contracts where plaintiffs claimed that defendants represented to them that, under the new contracts, they could channel business from other insurance brokers through their contracts with defendant but there was no showing that the asserted representation was false.

2. **Contracts § 34; Insurance § 2— termination of insurance agency contract—malicious interference with contract—insufficiency of evidence**

The trial court properly entered summary judgment for the individual defendant in plaintiffs' action for malicious interference with contract where plaintiffs alleged that they had agency contracts with defendant insurance company, the individual plaintiff was the insurance company's marketing general agent and had knowledge of the contracts, and the individual defendant intentionally induced defendant insurance company to terminate its agency contracts with plaintiffs; however, there was no genuine issue of material fact with respect to defendant's lack of justification, since the evidence was uncontroverted that defendant was responsible for recruiting agents in plaintiffs' area, part of his job was to recommend that certain persons be retained as agents or be terminated, and he acted within the scope of his authority in recommending to defendant insurance company that plaintiffs' contracts be terminated for violating the express policy that certain people not be allowed to sell defendant company's products and channel that business through plaintiffs' agency.

APPEAL by plaintiff from *Martin (John C.), Judge.* Judgment entered 25 May 1984 in Superior Court, LEE County. Heard in the Court of Appeals 18 September 1985.

Appellants J. Taylor Uzzell, Jr. (Uzzell) and Richard M. Hager (Hager) are insurance agents in Sanford, and appellant BEC, Inc. (BEC) is the corporation they formed to combine their insurance business. Appellee Integon Life Insurance Corporation (Integon) is an insurance company based in Winston-Salem, and appellee Leonard T. Tippett (Tippett) is Integon's marketing general agent for the Sanford area. (Defendant Robert L. Brantley is not involved in this appeal.)

Appellant Uzzell was an agent for Integon from June 1973 until July 1983. Uzzell had recruited appellant Hager to join Integon as an agent in March 1982. Until April 1983, both had been employed under the standard agent's contract with Integon. This contract provided, in addition to the payment of commissions on each policy sold, health benefits, corporate stock options, a pension plan and other benefits. While under this standard contract, Uzzell and Hager reported directly to appellee Tippett, whose job responsibilities included recommending to Integon the employment or termination of agents in the Sanford area.

In April 1983, both Hager and Uzzell surrendered their existing contracts with Integon in order to sign a new contract, termed a "general agent" contract. In effect, this new contract gave appellants higher commissions and greater independence in exchange for giving up the benefits provided by the standard contract. Like the old contracts, these new contracts were terminable at the will of either party. Uzzell and Hager were able, under the new contracts, to channel their combined business through their newly formed corporation, BEC, which had also entered into a general agent contract with Integon. The new contracts also enabled appellants to utilize other agents to sell Integon products and channel that business to Integon through BEC. However, this right was limited in that appellees had expressly retained the right to approve or disapprove the individuals used by BEC to sell Integon products in order to control the caliber of agents allowed to sell Integon products.

Soon after the signing of these new contracts, a dispute arose between the appellants and Tippett as to certain persons appellants were recruiting to sell Integon products. Tippett warned appellants that if they did not cease using these persons to sell Integon insurance, he would terminate their contracts. Not believing Tippett had such authority, appellants continued to use these persons while attempting to contact Tippett's superiors in Winston-Salem in order to clarify their positions vis-a-vis Tippett. Appellants' understanding of the new contracts was that their increased independence included no longer being responsible to Tippett. Appellants knew, however, that Tippett continued to earn commissions, called overwrites, on the policies they sold and was also required to repay Integon for overpayments of commissions,

called chargebacks, which could result from a client of appellants cancelling an Integon policy prematurely.

Tippett notified appellants on 23 June 1983 that he was terminating their contract effective 5 July 1983 because of their continued use of agents not approved by him to sell Integon products. Appellants still did not believe Tippett had the authority to cancel their contracts, so continued to use the unapproved brokers and continued their efforts to meet with Integon officials in Winston-Salem. Although Tippett did not have the unilateral authority to terminate appellants' contracts, his recommendation that the contracts be cancelled was forwarded to his superiors in Winston-Salem. On 2 August 1983 Buddy Daniel, Vice-President of Integon, notified appellants that their contracts had been cancelled effective 31 July 1983, per Tippett's recommendation.

On 8 August 1983 Tippett mailed letters to all Integon policyholders who bought their policies through either Hager or Uzzell advising those policyholders that appellants were no longer Integon agents, but assuring them that continued service of their policies would be provided by other Integon agents. Tippett also included in the letter a statement to the effect that anyone advising the policyholders to change insurance companies now would not be acting in the policyholders' best interests.

Appellants instituted this action raising several claims. Against appellee Integon, appellants claimed that its representatives had fraudulently induced them to surrender the benefits of their old contracts and to sign the new "general agent" contracts. They claimed Integon's representatives misrepresented the amount of autonomy they would have in selecting other agents to work with them particularly with respect to the use of licensed brokers not licensed by Integon. Appellants alleged this was a material fact inducing them to terminate their old contracts and enter into the new ones. Appellants claim damages resulting from the loss of benefits under the old contract. Appellants also alleged that the conduct of Integon representatives during this matter constituted unfair and deceptive trade practices in violation of G.S. 75-1.1.

Against appellee Tippett, appellants claimed Tippett wrongfully and maliciously interfered with their contracts with Integon. Also, appellants alleged that Tippett's letter of 8 August 1983

constituted an unfair and deceptive trade practice in violation of G.S. 75-1.1.

Appellees moved the trial court for summary judgment of all claims against them. After reviewing all evidence, including affidavits and depositions, and hearing arguments of counsel, the trial judge entered summary judgment for appellees for all of appellants' claims against them.

*Harrington and Gilleland by Robert B. Gilleland for plaintiff-appellant Uzzell.*

*Cameron, Hager and Kinnaman, P.A. by Richard B. Hager for plaintiff-appellant Hager.*

*Smith, Anderson, Blount, Dorsett, Mitchell and Jernigan by James K. Dorsett, III for defendant-appellee Integon Life Insurance Corporation.*

*Smith, Moore, Smith, Schell and Hunter by Alan W. Duncan for defendant-appellee Tippett.*

PARKER, Judge.

At the outset, we note that appellants' claims based on G.S. 75-1.1 are not before this court. Appellants' brief made no argument and cited no authority in support of these claims; therefore, they are deemed abandoned. Rule 28(b)(5), Rules of App. Proc. Appellants assign as error (i) the entry of summary judgment for Integon on Hager and Uzzell's claims based on fraud and (ii) the entry of summary judgment for Tippett on BEC's claim premised on malicious interference with BEC's contract with Integon.

In order to prevail when moving for summary judgment, the moving party must establish that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law when all factual inferences arising from the evidence are taken in the light most favorable to the nonmoving party. *Speck v. North Carolina Dairy Foundation, Inc.*, 311 N.C. 679, 319 S.E. 2d 139 (1984).

Appellants' surviving claim against appellee Integon is based on fraud and misrepresentations inducing them to terminate their old contracts, sacrifice substantial benefits, and enter into the new contracts. The essential elements of fraud in the inducement

were set out by our Supreme Court in *Johnson v. Phoenix Mutual Life Insurance Company*, 300 N.C. 247, 266 S.E. 2d 610 (1980).

> To make out a case of actionable fraud, plaintiffs must show: (a) that defendant made a representation relating to some material past or existing fact; (b) that the representation was false; (c) that defendant knew the representation was false when it was made or made it recklessly without any knowledge of its truth and as a positive assertion; (d) that defendant made the false representation with the intention that it should be relied upon by plaintiffs; (e) that plaintiffs reasonably relied upon the representation and acted upon it; and (f) that plaintiffs suffered injury.

300 N.C. at 253, 266 S.E. 2d at 615.

[1] Appellants' claim that James Perry, regional director for Integon, and appellee Tippett represented to them that the appellants, under their new contract, could channel business from other insurance brokers in Sanford through their contract with Integon. This, in effect, would have given appellants the authority to sell Integon insurance products through any person of their choice, so long as that person was duly licensed to sell insurance by the State of North Carolina. Appellants assert that this representation was material to their acceptance of the new contract and was relied upon by them when surrendering the benefits accumulated under their old contracts.

When the evidence available for consideration on the summary judgment motion is viewed in the light most favorable to appellants, it falls short of establishing the elements of fraud as outlined in *Johnson, supra.* Appellants have made no showing that the asserted representation was false. Even if such a representation were made, there were never any representations made as to specific individuals being approved to sell Integon products. The evidence shows that it was made clear throughout the discussions between the parties that Tippett and Integon would continue to require that persons selling Integon products be approved by Tippett before any business from them would be accepted. The general representation made by Integon that other persons could channel business through appellants for Integon was not false merely because Integon failed to approve specific individuals for selling Integon products. Moreover, the evidence is undisputed

that Tippett advised Uzzell and Hager, before they signed the new contracts, that he would not approve the person around whom most of the controversy centered.

Appellants in this case have failed to present a sufficient forecast of evidence to refute the appellees' showing that no genuine issue of material fact exists as to an essential element of appellants' claim for fraud. In a claim for relief based on fraud, summary judgment for defendant (appellees here) is proper where the forecast of evidence shows that even one of the essential elements of fraud is missing. *E.g., Briggs v. Mid-State Oil Co.*, 53 N.C. App. 203, 207, 280 S.E. 2d 501, 504 (1981). In the case at bar, defendant-appellees' forecast of evidence showed that there was no genuine issue of material fact as to the falsity of the representation. As this forecast was not refuted by an adequate forecast from plaintiff-appellants, defendant Integon was entitled to summary judgment as a matter of law on the claim for fraud. *Caldwell v. Deese*, 288 N.C. 375, 218 S.E. 2d 379 (1975).

[2] The same is true of appellants' surviving claim for malicious interference with contract against defendant Tippett. The essential elements of this tort are that (i) a valid contract existed between plaintiff and a third person; (ii) defendant had knowledge of such contract; (iii) defendant intentionally induced the third person not to perform his contract with plaintiff; and (iv) that defendant acted without justification. *Childress v. Abeles*, 240 N.C. 667, 84 S.E. 2d 176 (1954). The facts viewed in the light most favorable to appellants establish the existence of the first three elements. However, there is no genuine issue of material fact as to the element of justification. The evidence is uncontroverted that Tippett was responsible for the recruiting of agents in the Sanford area. Part of his job was to recommend that certain persons be retained as agents or be terminated. Clearly, he acted within the scope of his authority in recommending to Integon that appellants' contracts be terminated for violating the express policy of Tippett that certain persons not be allowed to sell Integon products and channel that business through BEC. Appellants made no forecast of evidence to rebut Tippett's showing of justification—that use of these individuals was causing dissent among the other agents under Tippett and that the policies sold by those unapproved individuals were being cancelled after short periods, causing both personal financial loss on account chargebacks to

Tippett and business losses for Integon. Tippett had a legitimate business interest to protect by assuring that people selling Integon products under his jurisdiction were reputable, reliable and able to meet company standards. Appellants were warned by Tippett that he considered the use of these individuals as grounds for terminating appellants' contracts. The contracts, in writing, were terminable at will. There is no genuine issue of material fact as to the existence of justification for Tippett's actions. Appellee Tippett was entitled to summary judgment as a matter of law.

The trial court properly granted Tippett and Integon's motions for summary judgment.

Affirmed.

Judges JOHNSON and EAGLES concur.