HUGH KEVIN HINES, PLAINTIFF v. GARLAND N. YATES, IN HIS INDIVIDUAL AND PERSONAL CAPACITY AND IN HIS OFFICIAL CAPACITY AS THE DISTRICT ATTORNEY FOR THE 19-B PROSECUTORIAL DISTRICT, STATE OF NORTH CAROLINA; LITCHARD D. HURLEY, IN HIS INDIVIDUAL AND PERSONAL CAPACITY AND IN HIS OFFICIAL CAPACITY AS THE SHERIFF OF RANDOLPH COUNTY, NORTH CAROLINA; WESTERN SURETY COMPANY, A SOUTH DAKOTA CORPORATION, DEFENDANTS

No. COA04-775

(Filed 5 July 2005)

**1. Appeal and Error— appealability—preservation of issues— failure to argue—interlocutory order**

The cross-assignments of error that plaintiff failed to argue in his brief are deemed abandoned under N.C. R. App. P. 28(a) and plaintiff's cross-appeals, except for wrongful discharge, are interlocutory and dismissed under N.C. R. App. P. 10.

**2. Appeal and Error— appealability—denial of summary judgment—immunity—substantial right**

Although an appeal from the denial of a motion for summary judgment is generally an appeal from an interlocutory order, defendants' appeal is properly before the Court of Appeals because defendants' answer and arguments assert the affirmative defenses of immunity and qualified immunity which affect a substantial right sufficient to warrant immediate appellate review.

**3. Wrongful Interference— malicious interference with contractual relations—summary judgment**

The trial court erred by denying defendant sheriff's motion for summary judgment on plaintiff's claim for malicious interference with contractual relations in defendant's official and individual capacity, because: (1) plaintiff's allegations fail to establish the element of "no justification" to support his claims for malicious interference with contract as an investigatorial assistant in the district attorney's office; (2) plaintiff's allegations do not show that defendant sheriff did not have an official or personal justification in requesting plaintiff to be reassigned or terminated and that defendant, as a constitutionally elected officer, enjoyed a qualified immunity from tort in communicating with defendant district attorney who was also a constitutionally elected officer; (3) plaintiff offered no evidence to show that the district attorney terminated him because of the sheriff's request or that he suf-

fered recoverable damages as a result of the sheriff requesting plaintiff's termination; and (4) the district attorney's affidavit and answers to plaintiff's interrogatories set forth objective and substantial reasons for terminating plaintiff, none of which were based upon the sheriff's request to do so.

**4. Constitutional Law— North Carolina—suit against district attorney in individual and personal capacity—summary judgment**

The trial court erred by concluding that defendant district attorney was not entitled to summary judgment on plaintiff's claim for relief under violations of the North Carolina Constitution in defendant's individual and personal capacity, because: (1) it is well settled in North Carolina that no direct cause of action for monetary damages exists against officials sued in their individual capacities who have allegedly violated a plaintiff's constitutional rights; and (2) plaintiff concedes that his complaint does not set forth a cause of action against defendant in his individual and personal capacity for this claim.

**5. Public Officers and Employees— wrongful termination— investigatorial assistant in district attorney's office**

The trial court did not err by granting summary judgment for defendant district attorney on plaintiff's wrongful termination claim based on defendant firing plaintiff as an investigatorial assistant after plaintiff's unsuccessful candidacy for sheriff, because: (1) plaintiff did not show that he was discharged for any reason that contravenes public policy; (2) plaintiff was not restrained by defendant from running for public office, making any speech, or engaging in a protected activity which furthers a public policy; (3) as an at-will and exempt employee under N.C.G.S. § 126-5(c1)(2) based on his employment in the Judicial Department, plaintiff's public opposition to his superior's discretionary decisions and his inability to work cooperatively with law enforcement agencies with which the district attorney must communicate and coordinate on a daily basis is a legally sufficient reason for defendant to terminate plaintiff's employment; (4) plaintiff did not allege that his candidacy for sheriff, speeches, and activities, for which he was allegedly terminated, resulted from his employer's demand that he conduct some unlawful activity or was in retaliation for cooperating with a law enforcement agency conducting an investigation; (5) plaintiff's allegations and evidence did not show how his candidacy for sheriff immunized

**HINES v. YATES**

[171 N.C. App. 150 (2005)]

his speech as political expression that is protected by a public policy exception to bar his termination when that speech publicly exuded insubordination and directly criticized his supervisor's prosecutorial discretion whether to bring criminal charges; (6) plaintiff's public statements criticizing defendant's discretionary decisions and the disruption of his office's working relationship with law enforcement agencies were sufficient reasons, standing alone, to terminate plaintiff's at-will employment; and (7) defendant's decision to terminate plaintiff rested within his lawful and discretionary scope of authority under N.C.G.S. § 7A-69.

**6. Civil Rights— § 1983 claim—failure to show deprivation of constitutionally protected rights**

The trial court erred by denying summary judgment for defendants on plaintiff's 42 U.S.C. § 1983 claim, because: (1) plaintiff failed to show any public policy exception which cloaks him from termination of his at-will employment as an investigatorial assistant who serves at the pleasure of the district attorney as provided by N.C.G.S. § 7A-69; (2) there is no genuine issue of material fact as to whether plaintiff was deprived of any rights, privileges, or immunities secured by the Constitution and laws as a terminated at-will employee of defendant district attorney (DA); (3) plaintiff's right to say whatever he wanted was not restrained by defendant DA or anyone else; and (4) defendant DA had the right to terminate plaintiff's employment for any reason, for no reason, or for an arbitrary or irrational reason so long as his actions did not violate a recognized public policy.

**7. Damages and Remedies— punitive damages—summary judgment**

The trial court's denial of defendants' motions for summary judgment on the remainder of plaintiff's claims, including those for punitive damages, that have not been previously dismissed are reversed.

Judge WYNN concurring in part and dissenting in part.

Appeals by defendants and cross appeals by plaintiff from order entered 26 February 2004 by Judge John O. Craig, III, in Randolph County Superior Court. Heard in the Court of Appeals 2 February 2005.

**HINES v. YATES**

[171 N.C. App. 150 (2005)]

*Puryear and Lingle, P.L.L.C., by David B. Puryear, Jr., for plaintiff-appellee/cross-appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General Grady L. Balentine, Jr., for defendant-appellant/cross-appellee Garland N. Yates.*

*Womble Carlyle Sandridge & Rice, A Professional Limited Liability Company, by Allan R. Gitter and Douglas R. Vreeland, for defendants-appellants/cross-appellees Litchard D. Hurley and Western Surety Company.*

TYSON, Judge.

Garland N. Yates ("Yates"), Litchard D. Hurley ("Hurley"), and Western Surety Company (collectively, "defendants") appeal from an order denying their motions for summary judgment. We affirm in part, reverse in part, and dismiss plaintiff's complaint.

## I. Background

From 7 January 1999 to 31 December 2002, Hugh Kevin Hines ("plaintiff") worked as an investigatorial assistant in the district attorney's office for 19-B Prosecutorial District. Plaintiff's job duties included locating and interviewing witnesses, serving subpoenas for attendance at trials, and acting as a liaison between the district attorney's office and law enforcement agencies. Prior to working for Yates, plaintiff worked as a lieutenant for the sheriff of Randolph County.

During the 2002 election, plaintiff became a candidate in the republican primary election for sheriff of Randolph County and challenged Hurley, the incumbent sheriff. Over the course of the campaign, plaintiff publicly criticized Yates for his prosecutorial decisions in prior cases and publicly announced his disagreement with Yates' decision to not criminally charge a sheriff's deputy who had collided with a motorcyclist during a pursuit. The motorcyclist died from injuries sustained from the collision. Plaintiff also publically expressed his disagreement with the sheriff's department's investigation and handling of an unrelated and unsolved murder case.

Plaintiff's affidavit states that:

Yates, on numerous occasions personally stated to me that he intended to discharge me from my employment . . . due to my seeking the office of Sheriff of Randolph County . . . after

each occasion on which I made a public appearance or there
was some news media attention in connection with my elec-
tion campaign.

After plaintiff appeared at a public event to express interest in
running for the sheriff's position, plaintiff was instructed by Yates
not to work on pending cases involving the Randolph County
sheriff's department.

In the primary election held 10 September 2002, Hurley defeated
plaintiff, secured the republican party's nomination, and won reelec-
tion as sheriff of Randolph County in the November general election.
On 16 September 2002, less than one week after the primary election,
plaintiff's annual employee performance report was completed. On 26
September 2002, Kay Lovin, Yates' administrative assistant and plain-
tiff's supervisor, informed plaintiff of his impending termination.
Yates extended the termination date to 31 October 2002, and again to
31 December 2002, and offered plaintiff the opportunity to resign.
Yates also offered to provide a reference to other law enforcement
agencies. Plaintiff refused to resign and continued to criticize the
sheriff's department after the election.

In his sworn affidavit, Yates stated, "[Plaintiff] continued to criti-
cize the Sheriff and even accused him of voter fraud" and "stated pub-
lically that he intended to run against the Sheriff again in 2006." On 31
December 2002, plaintiff received a separation notice from Yates stat-
ing as grounds that "[e]mployee is no longer able to function effec-
tively in his position. To wit: cooperate and maintain an effective and
confidential relationship with all law enforcement agencies in the
judicial district." Yates listed as a second reason for plaintiff's sepa-
ration as "[e]mployee further directly criticized supervisor's decision
in the media concerning a law enforcement matter."

Plaintiff instituted this action seeking damages from defend-
ants for various torts: (1) wrongful discharge against Yates in both his
official and individual capacity; (2) malicious interference with
contractual relations against Hurley; (3) violation of plaintiff's State
constitutional rights by Yates and Hurley in their official capacities;
(4) violation of plaintiff's federal constitutional rights under 42
U.S.C. § 1983 against Yates and Hurley in their official and per-
sonal individual capacities; and (5) claims for punitive damages for
Hurley's and Yates' conduct in their official and personal individual
capacities. Plaintiff asserted claims against Western Surety Company
on Hurley's official bond. Defendants answered and asserted

defenses of sovereign immunity, qualified immunity, and that plaintiff was an "at will employee."

Defendants moved for summary judgment. Hurley's sworn affidavit, filed with his motion for summary judgment, admits he asked Yates to reassign plaintiff from the sheriff's department's cases due to "[his] concern that a conflict of interest was arising by plaintiff's reportedly questioning crime victims as to whether they were satisfied with response times, friendliness, etc. of deputy investigators . . . for the time during the election campaign." Hurley denies requesting Yates to terminate plaintiff. Yates' sworn affidavit states, "[a]t no time did Sheriff Hurley or anyone on his behalf ask me to fire [plaintiff]. I made the decision."

The trial court granted defendants' motions regarding: (1) "plaintiff's first claim for relief as against defendant Yates in his official capacity and in his individual and personal capacity" (wrongful discharge); (2) "plaintiff's third claim for relief as against defendant Hurley in his official capacity and in his individual and personal capacity" (denial of State constitutional rights); (3) "plaintiff's third claim for relief as against defendant Yates in his official capacity, but not as against defendant Yates in his individual and personal capacity" (denial of State constitutional rights); (4) "plaintiff's fourth claim for relief as against defendant Yates in his official capacity for all forms of relief except injunctive relief, but not as against defendant Yates in his individual and personal capacity" (denial of federal constitutional rights under color of State law); (5) "plaintiff's sixth claim for relief as against defendant Yates in his official capacity, but not as against defendant Yates in his individual and personal capacity" (punitive damages); and (6) plaintiff's sixth claim for relief as against defendant Hurley in his official capacity but not as against defendant Hurley in his individual and personal capacity (punitive damages).

The trial court denied defendants' motions for summary judgment on plaintiff's: (1) second claim of relief for malicious interference with contractual relations against Hurley; (2) injunctive relief for violation of plaintiff's State constitutional rights by Yates in his individual and personal capacities; (3) violation of plaintiff's federal constitutional rights under 42 U.S.C. § 1983 against Yates in his individual and personal capacities limited to injunctive relief; (4) plaintiff's fifth claim for relief on the sheriff's bond against Western Surety Company (for wrongful conduct by Hurley in his official capacity as sheriff); and (5) punitive damages against both Hurley and Yates in

their individual and personal capacities. Defendants appeal and plaintiff cross appeals.

## II. Issues

The common issues presented by defendants are whether the trial court erred in denying defendants' summary judgment motions on plaintiff's claims for violation under 42 U.S.C. § 1983 and punitive damages. Defendants Hurley and Western Surety separately assert the trial court erred in denying summary judgment on plaintiff's malicious interference with contractual relations as plaintiff failed to allege a waiver of immunity.

[1] Plaintiff assigned cross assignments of error on the granting of defendants' motions for summary judgment dismissing plaintiff's claims for: (1) wrongful discharge by Yates; (2) punitive damage charge against Hurley in his official capacity; (3) all forms of relief except injunction in regards to his 42 U.S.C. § 1983 action; and (4) punitive damages against Yates and Hurley in their official capacities. Except for the trial court's granting Yates summary judgment and dismissing plaintiff's claims for wrongful discharge, plaintiff's arguments in his brief assert solely alternative grounds to support the trial court's partial summary judgment in his favor. Plaintiff abandoned his remaining cross assignments of error by not arguing them in his brief. N.C. R. App. P. 28(a) (2004); *Summers v. City of Charlotte*, 149 N.C. App. 509 n.8, 562 S.E.2d 18 n.8 (2002). Also, plaintiff's cross appeals, except the wrongful discharge, are interlocutory and are dismissed. N.C. R. App. P. 10 (2004).

## III. Interlocutory Appeal

[2] Defendants' appeal of an order denying their motions for summary judgment is interlocutory. However, "this Court has repeatedly held that appeals raising issues of governmental or sovereign immunity affect a substantial right sufficient to warrant immediate appellate review." *Price v. Davis*, 132 N.C. App. 556, 558-59, 512 S.E.2d 783, 785 (1999) (citations omitted). We recognize the non-prevailing party's right to immediate review because " 'the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action.' " *Id.* (quoting *Epps v. Duke University, Inc.*, 122 N.C. App. 198, 201, 468 S.E.2d 846, 849, *disc. rev. denied*, 344 N.C. 436, 476 S.E.2d 115 (1996) (citing *Herndon v. Barrett*, 101 N.C. App. 636, 639, 400 S.E.2d 767, 769 (1991))). Defendants' answer and arguments assert the affirmative defense of

immunity and qualified immunity. This appeal is properly before this Court. *Id.*

## IV. Standard of Review

. In a motion for summary judgment, the movant has the burden of establishing that there are no genuine issues of material fact. The movant can meet the burden by either: "1) Proving that an essential element of the opposing party's claim is nonexistent; or 2) Showing through discovery that the opposing party cannot produce evidence sufficient to support an essential element of his claim nor [evidence] sufficient to surmount an affirmative defense to his claim." *Price v. Davis*, 132 N.C. App. 556, 559, 512 S.E.2d 783, 786 (1999) (citing *Messick v. Catawba County*, 110 N.C. App. 707, 712, 431 S.E.2d 489, 492-93, *disc. rev. denied*, 334 N.C. 621, 435 S.E.2d 336 (1993)).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

N.C. Gen. Stat. § 1A-1, Rule 56(e) (2003).

## V. Interference with Contract

[3] Hurley asserts the trial court erred in its order denying his motion for summary judgment on plaintiff's claim against him for malicious interference with contractual relations in his official and individual capacity. We agree.

The five essential elements a plaintiff must show for a viable claim for malicious interference with contract are:

> (1) a valid contract existed between plaintiff and a third person, (2) defendant knew of such contract, (3) defendant intentionally induced the third person not to perform his or her contract with plaintiff, (4) defendant had no justification for his or her actions, and (5) plaintiff suffered damage as a result.

*Wagoner v. Elkin City Schools' Bd. of Education*, 113 N.C. App. 579, 587, 440 S.E.2d 119, 124 (1994) (*citing McLaughlin v. Barclays American Corp.*, 95 N.C. App. 301, 308, 382 S.E.2d 836, 841, *cert. denied*, 325 N.C. 546, 385 S.E.2d 498 (1989); *Uzzell v. Integon Life*

*Ins. Corp.*, 78 N.C. App. 458, 463, 337 S.E.2d 639, 643 (1985), *cert. denied*, 317 N.C. 341, 346 S.E.2d 149 (1986)).

Plaintiff's complaint alleges "[a]t all times herein alleged, Hurley was the duly elected Sheriff of Randolph County." Plaintiff's claim for malicious interference with contractual relations asserts Hurley "acted without any proper purpose related to his duties as Sheriff . . . solely for reasons of ill will and malice . . . to intentionally and maliciously cause defendant Yates to terminate plaintiff's employment." Hurley argues public official immunity and qualified immunity bar this claim.

"Governmental immunity protects the governmental entity and its officers or employees sued in their 'official capacity.' " *Taylor v. Ashburn*, 112 N.C. App. 604, 607, 436 S.E.2d 276, 279 (1993) (quoting *Whitaker v. Clark*, 109 N.C. App. 379, 382, 427 S.E.2d 142, 144, *disc. rev. and cert. denied*, 333 N.C. 795, 431 S.E.2d 31 (1993)), *cert. denied*, 336 N.C. 77, 445 S.E.2d 46 (1994). We have held "absent an allegation to the effect that immunity has been waived, the complaint fails to state a cause of action." *Clark v. Burke County*, 117 N.C. App. 85, 88, 450 S.E.2d 747, 748 (1994) (citing *Gunter v. Anders*, 115 N.C. App. 331, 444 S.E.2d 685 (1994)). We have also held "[g]overnmental immunity . . . does not preclude an action against the sheriff and the officers sued in their official capacities . . . . The statutory mandate that the sheriff furnish a bond works to remove the sheriff from the protective embrace of governmental immunity . . . ." *Messick*, 110 N.C. App. at 715, 431 S.E.2d at 494 (internal citations omitted).

Although plaintiff failed to plead Hurley or Yates waived immunity, plaintiff joined the issuer of the sheriff's bond as a party defendant. His failure to allege waiver of immunity procedurally does not bar review of his claim. Hurley's governmental immunity in his official capacity has been sufficiently waived as to allow review of this claim. *Id.*

Plaintiff's complaint alleges conduct that occurred at all times while Hurley was sheriff, about matters and conversations concerning the sheriff's department and its working relationship with the district attorney's office. The allegations indicate a cause of action against Hurley in his official capacity. *See Taylor*, 112 N.C. App. at 608, 436 S.E.2d at 279; *see also Whitaker*, 109 N.C. App. at 383, 427 S.E.2d at 144-45.

Hurley stated in his response to plaintiff's interrogatories that he had concerns about: (1) plaintiff's derogatory comments about a

**HINES v. YATES**

[171 N.C. App. 150 (2005)]

deputy; and (2) the perception of a conflict of interest with plaintiff working at Yates' office in Randolph County and had requested that plaintiff work in other counties in the judicial district. Hurley stated Yates did not act on this request and reassign plaintiff. Hurley also stated in his affidavit that plaintiff's public criticism of himself, a deputy, and Yates concerning a discretionary decision on a particular case, created an unsatisfactory and potentially damaging working relationship between the sheriff's department and the district attorney's office.

Plaintiff's allegations fail to establish the fourth element of "no justification" to support his claims for malicious interference with contract. *Wagoner*, 113 N.C. App. at 587, 440 S.E.2d at 124. Plaintiff's allegations do not show Hurley did not have an official or personal justification in requesting plaintiff to be reassigned or terminated and that Hurley, as a constitutionally elected officer, enjoyed a qualified immunity from tort in communicating with Yates, also a constitutionally elected officer. *Id.*

Plaintiff states in his affidavit:

Mr. Yates stated to me that Sheriff Hurley had contacted him to complain about my continuing campaign activities : . . during the period between October 15, 2001, and August 22, 2002, stated to me on many different occasions that Sheriff Hurley had told him that Sheriff Hurley wanted him to terminate me from my employment with the District Attorney's office.

Plaintiff concedes he was not fired at that time and was given two extensions by Yates of his pending termination in order to secure other employment along with the option to resign and receive a reference to other law enforcement agencies after the 2002 primary and general elections were held. Plaintiff was terminated on 31 December 2002, more than three months after the conclusion of the primary election. Plaintiff offered no evidence to show Yates terminated him because of Hurley's request. Yates stated in his sworn answers to plaintiff's interrogatories that plaintiff was terminated because of his

inability to cooperate with and to maintain good working relations with the law enforcement agencies in the prosecutorial district; inability to function as an effective liaison with sheriff's department; . . . inability to show loyalty to the District Attorney's office by criticizing me over the motorcycle incident; [and] inability to refrain from campaigning on office time . . . .

Plaintiff was terminated several months after Hurley's purported request. Yates' affidavit and answers to plaintiff's interrogatories sets forth objective and substantial reasons for terminating plaintiff, none of which were based upon Hurley's request to do so. Examination of the verified pleadings shows: (1) Yates had justification for his actions; and (2) plaintiff suffered no recoverable damage as a result. *Id.* Plaintiff made no showing that he was terminated because of Hurley's request or that he suffered recoverable damages as a result of Hurley requesting plaintiff's termination. *Id.*

As the material facts are not in dispute, the trial court should have granted summary judgment for Hurley and Western Surety on plaintiff's claim for malicious interference with contractual relations. That portion of the trial court's order is reversed.

## VI.  State Constitutional Rights

[4] The trial court concluded that Yates was not entitled to summary judgment on plaintiff's claim for relief under violations of the North Carolina Constitution "in [his] individual and personal capacity." It is well settled in North Carolina that no direct cause of action for monetary damages exists against officials sued in their individual capacities who have allegedly violated a plaintiff's constitutional rights. *Corum v. University of North Carolina*, 330 N.C. 761, 788, 413 S.E.2d 276, 293, *cert. denied*, 506 U.S. 985, 121 L. Ed. 2d 431 (1992). In *Corum*, our Supreme Court held, a "plaintiff may assert his freedom of speech right only against state officials, sued in their official capacity." 330 N.C. at 788, 413 S.E.2d at 293.

Plaintiff concedes his complaint does not set forth a cause of action against Yates in his "individual and personal capacity" in his State constitutional claim for relief. "The trial court should have granted [defendants'] motion for summary judgment as to plaintiff's claims against him . . . . The trial court's failure to do so was error." *Caudill v. Dellinger*, 129 N.C. App. 649, 658, 501 S.E.2d 99, 104 (1998). That portion of the trial court's judgment denying Yates' motion for summary judgment on plaintiff's State constitutional claim is reversed.

## VII.  Wrongful Termination

[5] Plaintiff assigns error to the trial court granting summary judgment for Yates and argues he was wrongfully terminated, immunity does not bar his claim, and he properly asserted a 42 U.S.C. § 1983 action against defendants. Plaintiff was employed by Yates as an

investigatorial assistant "to serve at his pleasure." N.C. Gen. Stat. § 7A-69 (2003). Yates argues he: (1) retained complete discretion in the evaluation of plaintiff's job performance and retention; (2) was acting in his official capacity in terminating plaintiff; and (3) is entitled to public official and qualified immunity.

In *Coman v. Thomas Manufacturing Co.*, the plaintiff alleged that he was discharged from his employment as a long-distance truck driver after refusing to violate federal transportation regulations. 325 N.C. 172, 381 S.E.2d 445 (1989). The plaintiff brought suit for wrongful discharge. In *Coman*, our Supreme Court explicitly recognized a public policy exception to the well-entrenched employment-at-will doctrine, quoting with approval the following language from the Court of Appeals' opinion:

> [W]hile there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy. A different interpretation would encourage and sanction lawlessness, which law by its very nature is designed to discourage and prevent.

325 N.C. at 175, 381 S.E.2d at 447 (quoting *Sides v. Duke University*, 74 N.C. App. 331, 342, 328 S.E.2d 818, 826, *disc. rev. denied*, 314 N.C. 331, 333 S.E.2d 490 (1985), *overruled on other grounds by Kurtzman v. Applied Analytical Industries, Inc.*, 347 N.C. 329, 331, 493 S.E.2d 429, 422 (1997) (holding that absent a contract, employment is presumed to be at will; reassurances of employment alone do not constitute a contract)). The Court stated, "public policy has been defined as the principle of law which holds that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." *Id.* at 175 n.2, 381 S.E.2d at 447 n.2 (citing *Petermann v. International Brotherhood of Teamsters*, 174 Cal. App. 2d 184, 344 P.2d 25 (1959)).

Pursuant to N.C. Gen. Stat. § 126-5(c1)(2) (2003), a plaintiff, as an "[o]fficer[] and [or] employee[] of the Judicial Department," is exempt from protections of the State Personnel Act. Plaintiff served at the "pleasure" of the district attorney, was exempt from coverage under the State Personnel Act, and was an "at will" employee to Yates. N.C. Gen. Stat. § 7A-69.

This Court held in *Caudill* a district attorney's termination of his "administrative assistant's employment," as permitted through N.C.

Gen. Stat. § 7A-68, because she cooperated with the State Bureau of Investigation is in direct conflict with public policy. 129 N.C. App. at 656-57, 501 S.E.2d at 103-04. We held, "it is the public policy of this state that citizens cooperate with law enforcement officials in the investigation of crimes." *Id.* at 657, 501 S.E.2d at 104.

Unlike the plaintiff in *Caudill*, plaintiff's allegations do not show he was discharged for any reason that "contravenes public policy." *Coman*, 325 N.C. at 175, 381 S.E.2d at 447 (quoting *Sides*, 74 N.C. App. at 342, 328 S.E.2d at 826); *see also Caudill*, 129 N.C. App. at 656, 501 S.E.2d at 103. Plaintiff argues he is entitled to publically criticize the sheriff and the district attorney while a candidate for sheriff. Yates states in his sworn affidavit that plaintiff's speeches were directly injurious to him and the district attorney's office and detrimental to its cooperation and coordination with the sheriff's department and other law enforcement agencies. Yates stated in plaintiff's notice of termination that he was "no longer able to function effectively in his position" and Yates cited his "lack of confidence" in plaintiff's ability to maintain a relationship with law enforcement agencies and plaintiff's insubordinate criticism of his employer's discretionary decisions. Plaintiff was not restrained by Yates from running for public office, making any speech, or engaging in a protected activity which furthers a public policy. *Id.* at 175, 381 S.E.2d at 446. As an at will and exempt employee, plaintiff's public opposition to his superior's discretionary decisions and his inability to work cooperatively with law enforcement agencies with which the district attorney must communicate and coordinate on a daily basis is a legally sufficient reason for Yates to terminate plaintiff's employment. Unlike the plaintiff in *Coman* and in *Caudill*, plaintiff here did not allege his candidacy, speeches, and activities, for which he was allegedly terminated, resulted from his employer's demand that he conduct some unlawful activity or was in retaliation for cooperating with a law enforcement agency conducting an investigation. *See Coman*, 325 N.C. at 175-76, 381 S.E.2d at 447; *Caudill*, 129 N.C. App. at 656-57, 501 S.E.2d at 104 (the plaintiff gave truthful information on the district attorney's expense accounts and falsification of bank documents to a law enforcement agency).

Plaintiff's allegations and evidence does not show how his candidacy for sheriff immunizes his speech as political expression that is protected by a public policy exception to bar his termination, when that speech publically exudes insubordination and directly criticizes his supervisor's prosecutorial discretion whether to bring criminal

charges. Plaintiff was a candidate for sheriff, not for district attorney, and was told by Yates to "keep his office out of it" when Yates learned plaintiff would be a candidate for sheriff.

Plaintiff's public statements criticizing Yates' discretionary decisions and the disruption of his office's working relationship with law enforcement agencies were sufficient reasons, standing alone, to terminate plaintiff's at will employment. Yates' decision to terminate plaintiff rested within his lawful and discretionary scope of authority. N.C. Gen. Stat. § 7A-69. Plaintiff's termination was not injurious to the public or "against the public good." *Coman*, 325 N.C. at 175 n.2, 381 S.E.2d at 447 n.2. Plaintiff has not presented any evidence to establish a genuine issue of material fact to support a claim for wrongful discharge against Yates. Plaintiff's cross assignment of error is overruled. That portion of the trial court's order is affirmed.

## VIII. 42 U.S.C. § 1983

**[6]** Defendants argue the trial court erred in denying summary judgment for them for immunity against plaintiff's 42 U.S.C. § 1983 claim. We agree.

42 U.S.C. § 1983 (2003) provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding to redress . . . .

As an at will and exempt employee, plaintiff has no protected "rights, privilege, or immunities" or property interest to assert in his employment by Yates without proof of violation of a public policy or constitutional deprivation. *Id.* N.C. Gen. Stat. § 7A-69 provides an investigatorial assistant "serve[s] at his [district attorney's] pleasure." Further, pursuant to N.C. Gen. Stat. § 126-5(c1)(2), plaintiff, as an "[o]fficer[] and [or] employee[] of the Judicial Department," is exempt from the State Personnel Act. Plaintiff is an at will employee. *Caudill*, 129 N.C. App. at 649, 501 S.E.2d at 99 (an administrative assistant pursuant to N.C. Gen. Stat. § 7A-68 was an employee to serve at the pleasure of the district attorney and was not covered

under the State Personnel Act, thus an at will employee, but her termination was protected under the Whistle Blower Act).

Plaintiff has failed to show any public policy exception which cloaks him from termination of his at will employment. Moreover, there is no genuine issue of material fact as to whether plaintiff was deprived of "any rights, privileges, or immunities secured by the Constitution and laws . . ." as a terminated at will employee of Yates. 42 U.S.C. § 1983.

Plaintiff's right to say whatever he wanted was not restrained by Yates or anyone else. Yates had the right to terminate plaintiff's employment for any reason or for "no reason, or for an arbitrary or irrational reason," so long as Yates' actions did not violate a recognized public policy. *Coman*, 325 N.C. at 175, 381 S.E.2d at 447 (quotation omitted); *Caudill*, 129 N.C. App. at 656, 501 S.E.2d at 103 (quotation omitted). Without any showing of a deprivation of any constitutionally protected rights, plaintiff's 42 U.S.C. § 1983 claim must be dismissed. The trial court erred in not granting summary judgment for defendants on this claim.

## IX. Conclusion

No genuine issue of material fact supports the elements for plaintiff's malicious interference with contract claim against Hurley. Plaintiff concedes his State constitutional claim against Yates in his individual capacity. Yates can not be held liable for monetary relief for violation of plaintiff's State constitutional rights without State action. *Corum*, 330 N.C. at 788, 413 S.E.2d at 293. Plaintiff fails to assert a contravention of "public policy" claim or a wrongful termination claim against Yates. *Id.* Plaintiff's 42 U.S.C. § 1983 action should have been dismissed because no genuine issue of material fact tends to show he was deprived of any protected "rights, privileges or immunities" under color of law, or public policy as a terminated at will employee. 42 U.S.C. § 1983.

As a constitutionally elected officer, Yates has the statutory right to choose his staff to "serve at his pleasure." *Caudill*, 129 N.C. App. at 656, 501 S.E.2d at 103; N.C. Gen. Stat. § 7A-69. Plaintiff's inconsistency and fallacy throughout his claims and arguments are his assertions that freedom of speech and expression shields his termination from at will employment, (that is exempt from the State Personnel Act), and compels his reinstatement by injunctive relief and allows him to hold Yates and Hurley liable for compensatory and punitive damages.

**HINES v. YATES**

[171 N.C. App. 150 (2005)]

Plaintiff asserts Hurley is liable in tort for speaking his views of plaintiff to Yates on matters that concern both constitutional officers, and Yates must suffer plaintiff's continued employment while his subordinate publically criticizes and disrespects the district attorney's office, and erodes its working relationship with a law enforcement agency. Plaintiff told Yates he planned to continue this behavior for the next four years when he would again be a candidate for sheriff.

Plaintiff was never: (1) restrained from becoming a candidate, filing, and running for elective office; (2) restrained from making any speeches or representations, other than his employer's request to "leave [the district attorney's] office out of it;' " or (3) terminated for any conduct protected by the United States or North Carolina Constitutions or established public policy. Plaintiff's insubordination and criticism of Yates' discretionary decisions were blatant, impugned the character of his employer, and disrupted an essential working relationship between the sheriff's department and the district attorney's office. When faced with plaintiff's continued criticism of the sheriff's department after the election, his allegations of voter fraud and plaintiff's stated intent to seek the sheriff's office again in 2006, Yates was not powerless to avoid years of continued turmoil and future criticisms.

Any constitutionally elected officer of the judicial department possesses the inherent and statutory right to choose their staff. Such officers cannot be compelled under threats of injunctive relief or payment of damages to retain or reinstate an insubordinate at will employee where no constitutional or public policy violation demands retention or reinstatement. N.C. Gen. Stat. 7A-69; *Caudill*, 129 N.C. App. 649, 501 S.E.2d 99 (district attorney's administrative assistant fired in violation of public policy is not entitled to reinstatement under successor district attorney).

[7] We have carefully reviewed plaintiff's remaining claims defendants appealed from and fail to find any claims plaintiff asserted, which shields him from termination of his at will and exempt employment as Yates' investigatorial assistant. *Caudill*, 129 N.C. at 658, 501 S.E.2d at 104. The trial court's grant of summary judgment for Yates on plaintiff's wrongful discharge claim is affirmed. The trial court's denial of defendants' motions for summary judgment on the remainder of plaintiff's claims, including those for punitive damages, not previously dismissed is reversed. Plaintiff's complaint is dismissed.

Affirmed in part, Reversed in part, and Dismissed.

Judge McGEE concurs.

Judge WYNN concurs in part, dissents in part.

WYNN, Judge concurring in part, dissenting in part.

The majority states that "Examination of the verified pleadings shows: (1) Yates had justification for his actions; and (2) plaintiff suffered no damage as a result. *Id.* Plaintiff made no showing that he was terminated because of Hurley's request or that he suffered recoverable damages as a result of Hurley requesting plaintiff's termination." Because, beyond the pleadings, *which are not verified*, the "depositions, answers to interrogatories, and admissions on file, together with the affidavits," N.C. Gen. Stat. § 1A-1, Rule 56(c) (2004), reveal that there exists a material dispute of fact as to Plaintiff's interference with contract claim, I respectfully dissent as to that claim.

Section 1A-1, Rule 56 of our General Statutes states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c). Summary judgment

> is "a drastic measure, and it should be used with caution." *Williams v. Carolina Power & Light Co.*, 296 N.C. 400, 402, 250 S.E.2d 255, 257 (1979). "When ruling on a motion for summary judgment, 'the court must look at the record in the light most favorable to the party opposing the motion.'" *Wilkes County Vocational Workshop, Inc. v. United Sleep Prods.*, 321 N.C. 735, 737, 365 S.E.2d 292, 293 (1988) (quoting *W.S. Clark & Sons, Inc. v. Union Nat'l Bank*, 84 N.C. App. 686, 688, 353 S.E.2d 439, 440, *disc. rev. denied*, 320 N.C. 177, 358 S.E.2d 70 (1987)).

*Moore v. City of Creedmoor*, 345 N.C. 356, 364, 481 S.E.2d 14, 20 (1997).

On summary judgment, the movant has the burden of clearly establishing the lack of any material factual dispute. *Jennings Communs. Corp. v. PCG of the Golden Strand, Inc.*, 126 N.C. App. 637, 639, 486 S.E.2d 229, 231 (1997) ("The party moving for summary

judgment has the burden of clearly establishing a lack of any triable issue of fact by the record proper before the court.") (citing *Singleton v. Stewart*, 280 N.C. 460, 465, 186 S.E.2d 400, 403 (1972)).

As the majority notes,

> There are five essential elements for an action for malicious interference with contract: (1) a valid contract existed between plaintiff and a third person, (2) defendant knew of such contract, (3) defendant intentionally induced the third person not to perform his or her contract with plaintiff, (4) defendant had no justification for his or her actions, and (5) plaintiff suffered damage as a result.

*Wagoner v. Elkin City Sch. Bd. of Educ.*, 113 N.C. App. 579, 587, 440 S.E.2d 119, 124 (1994) (citations omitted).

The majority here finds that "Examination of the verified pleadings shows: (1) Yates had justification for his actions; and (2) plaintiff suffered no damage as a result. *Id.* Plaintiff made no showing that he was terminated because of Hurley's request or that he suffered recoverable damages as a result of Hurley requesting plaintiff's termination." Viewing the evidence in the light most favorable to the non-moving party, as required by law, I disagree.

First, as to the "no justification" element, the evidence in the record demonstrates a material dispute of fact. In Plaintiff's affidavit of 13 November 2003, he stated that "Mr. Garland Yates, on numerous occasions personally stated to me that he intended to discharge me from my employment as his investigatorial assistant due to my seeking the office of Sheriff of Randolph County." Plaintiff stated that "[o]n each such occasion, Mr. Yates stated to me that Sheriff Hurley had contacted him to complain about my continuing campaign activities."

Mr. Tony Yates, Defendant Yates' brother, stated in his deposition that when he went to his brother Defendant Yates' office, "I told him, I said, I've come over here because I heard you were going to fire Kevin because he's going to run for sheriff. And I said I realize that, you know, you have the right to do whatever you want . . . . But I said, I don't think this is fair because a person has a right to run for a political office in this country." Upon being asked whether "your brother ever t[old] you that Sheriff Hurley expressed any interest in having Mr. Hines discharged[,]" Mr. Yates answered "[y]es" and stated that "[a]t the end of that little statement, he made the—made the state-

ment that the sheriff had called him and told him that he had to get rid of Kevin now."

In his deposition, Plaintiff stated that Defendant Yates' brother, Tony Yates, as well as Defendant Yates himself, informed him that Defendant Hurley demanded that Defendant Yates terminate Plaintiff's employment because of Plaintiff's candidacy for sheriff. Plaintiff stated that Defendant Yates told him "that the sheriff come to him and told him he wanted me—that he wanted me moved out of the county. He wanted me fired." Plaintiff said that Defendant Yates "told me he was going to fire me at different—at different times. He was going to fire me if I filed. And then when I filed, he decided to wait, and then he told me he was going to fire me before the election, and then he told me he was going to fire me after the election. I was told countless times that he was going to fire me if I ran against him."

In her deposition and through an accompanying exhibit, Ms. Cynthia Kay Lovin, administrative assistant to Defendant Yates, indicated that Plaintiff's performance evaluations for 2001 and 2002 rated Plaintiff's job performance as being satisfactory to outstanding. A portion of his 2001 performance evaluation stated:

Kevin had previous law enforcement experience when he joined our office. He possesses excellent investigative skills, which our office uses to develop and prepare cases for trial. He also serves as a liaison with the law enforcement agencies and has a proactive working relationship with these agencies.

Kevin has a very easy-going personality, which is a true asset in his job performance. He has proven to be invaluable in his ability to locate and interview witnesses. This is often a time-consuming process and requires someone with excellent investigative techniques and the ability to communicate with all segments of society.

Kevin is also very informed as to the elements of criminal law and the policies and procedures of the judicial system. He works independently and has the ability to analyze each case or situation and make any necessary decisions.

Kevin is always available and willing to help . . . whether it is directly in our office or in the judicial community.

In Defendant Hurley's deposition, the following colloquy took place:

Q: Is it within the scope of your authority as sheriff of Randolph County to cause or seek to cause the termination of any employee at the district attorney's office?

A: No. I didn't try to do that.

Q: Well, my question is simply is that within the scope of your authority.

A: No, sir.

Q: So whether you did it or not, you agree you don't have any legal right to try to cause a termination of an employee at the district attorney's office?

A: Absolutely not.

* * *

Q: Did you have any legal right or lawful authority in the fall of 2001 to ask Garland Yates to get rid of Kevin Hines?

A: No.

With regard to the damages element of Plaintiff's interference with contract claim, Plaintiff made clear that he was terminated from his employment with Defendant Yates, and at his deposition on 13 June 2003 that he was seeking but had not yet found full-time employment and was "drawing from the state of North Carolina unemployment . . . ." Indeed, Plaintiff stated that Defendant Hurley had contacted an administrator at a community college, at which Plaintiff obtained part-time employment after his termination by the District Attorney's Office, and "tried to get me fired . . . ."

In sum, the pleadings in this matter, contrary to the majority's assertion, are unverified. Under the "drastic measure" of summary judgment, this Court must look at the record in the light most favorable to the party opposing the motion. Beyond the unverified pleadings, the "depositions, answers to interrogatories, and admissions on file, together with the affidavits" in this case show that there are genuine issues of material fact as to Plaintiff's interference with contract claim. Thus, Superior Court Judge John O. Craig, III, correctly applied the law to this claim in denying summary judgment.